# Exhibit B

# KEZHAYA LAW PLC



MATTHEW A. KEZHAYA
100 S. FIFTH STREET
19TH FLOOR
MINNEAPOLIS, MN 55402

P: (479) 431-6112
F: (479) 282-2892
MATT@KEZHAYA.LAW

February 3, 2021

Texas Department of State Health Services
PO Box 149347
Austin, Texas 78714-9347
      By certified mail, return receipt requested
      And by email to: customer.service@dshs.texas.gov

Re: <u>TST v. Tx. Health and Human Serv's Comm. and Planned Parenthood</u> – demand letter

To whom it may concern,

    I represent The Satanic Temple, Inc. ("**TST**") and an anonymous pregnant member who desires an abortion ("**Ann Doe**") in a potential dispute surrounding my clients' demand for a religious exemption to the following Texas abortion regulations:

- medically unnecessary sonogram precondition of obtaining an abortion,

- a forced decision to reject the "opportunity" of seeing the sonogram results,

- the forced listening to a narrative of the sonogram results, and

- a mandatory waiting period between the sonogram and the abortion.

TEX. HEALTH & S § 171.012. The abortion is to be performed by the Planned Parenthood facility addressed above. The facility has refused to provide a religious exemption to the sonogram requirement, which is enforced by the Texas Department of State Health Services.

    This letter is a demand for a religious exemption to the sonogram requirement. TEX. CIV. PRAC. & REM.CODE § 110.006. I use the word "demand" in the legal sense; i.e. only as the assertion of a legal right, without connoting any ill will. If this matter does turn to litigation, please know that TST and Ms. Doe both support the mission of Planned Parenthood and understand its obligation to adhere to applicable Texas law and regulations.

    The primary legal basis for the religious exemption is the Texas Religious Freedom Restoration Act ("**TRFRA**") encoded at TEX. CIV. PRAC. & REM.CODE § 110.001 *et seq.* Under TRFRA, the government "may not substantially burden a person's free exercise of religion [unless it] demonstrates that the application of the burden to the person . . . is in furtherance of a compelling governmental interest; and . . . is the least restrictive means of furthering that interest." <u>Barr v. City of Sinton</u>, 295 S.W.3d 287, 296 (Tex. 2009) (quoting TEX. CIV. PRAC. & REM.CODE § 110.003(a)-(b)).

    Ms. Doe will be participating in an abortion ritual. The details of the ritual are enclosed with this email. Importantly, the abortion ritual (1) requires an abortion; and (2) affirms her religious



# KEZHAYA LAW PLC

MATTHEW A. KEZHAYA
100 S. FIFTH STREET
19TH FLOOR
MINNEAPOLIS, MN 55402

P: (479) 431-6112
F: (479) 282-2892
MATT@KEZHAYA.LAW

subscription to TST's Third and Fifth Tenets.[1,2]   But before Ms. Doe can get her abortion–and therefore participate in the abortion ritual–the government has required that she get a sonogram. TEX. HEALTH & S § 171.012(a)(4) and (5).

The requirements substantially interfere with Ms. Doe's religious beliefs and practices for two reasons.  First, the requirements are a precondition to Ms. Doe's ability to participate in a religious ceremony.  It is a substantial interference per se for the State to place a regulatory hurdle–one that costs money–in front of a religious exercise.  The State might as well tax and regulate Mass.

Second, the requirements violate her sincerely-held religious beliefs.  As stated above, Ms. Doe's sincerely-held religious beliefs are that (1) her actions are to be rooted in peer-reviewed scientific consensus; and (2) her bodily autonomy is inviolable.  These requirements violate both Tenets.

There is no medical basis for Texas to require a sonogram before an abortion.  See Dr. Jen Russo, "Mandated Ultrasound Prior to Abortion" *Virtual Mentor*. 2014;16(4):240-244.  doi: 10.1001/virtualmentor.2014.16.4.ecas1-1404.  Its sole apparent purpose is to influence some patients away from the abortion and toward childrearing.  See Gatter M, Kimport K, Foster DG, Weitz TA, Upadhyay UD. Relationship between ultrasound viewing and proceeding to abortion. *Obstet Gynecol*. 2014;123(1):81-87.

The requirement that Ms. Doe be presented with the "opportunity" to see the sonogram images and hear the heart auscultation is a transparent effort to infringe upon Ms. Doe's zone of conscience. There is no subtlety to the State's position, communicated through these requirements, that Ms. Doe should feel doubt, guilt, and shame about her decision to have this abortion.  See Planned Parenthood of Se. Pennsylvania v. Casey, 505 U.S. 833, 852, 112 S. Ct. 2791, 2807, 120 L. Ed. 2d 674 (1992).

I acknowledge Texas's efforts to minimize the intrusion on Ms. Doe's zone of conscience.  She can, after all, reject the "opportunity" to see the sonogram images and hear the heart auscultation. TEX. HEALTH & S § 171.0122.  But there is no mechanism for her to reject the opportunity to receive the verbal explanation of the results. Id.  It strains imagination why the victim of a sexual assault can waive this requirement, but someone with a religious objection cannot.  The same is true for the waiting period between sonogram and abortion.  TEX. HEALTH & S § 171.012.  There is no credible basis for this period except to intrude on Ms. Doe's conscience.

Because these requirements have no basis in science, they violate the Fifth Tenet.  Because the unifying purpose of all these requirements is to undermine Ms. Doe's decision for her health and her future, they violate the Third Tenet.

Based on the foregoing, these requirements substantially interfere with Ms. Doe's religious beliefs and practices.  Thus, it must survive the strict scrutiny test.  While it has been established that this statute survives intermediate scrutiny, see Texas Med. Providers Performing Abortion Servs. v. Lakey,

---

[1] The Third Tenet is "One's body is inviolable, subject to one's own will alone."
[2] The Fifth Tenet is "Beliefs should conform to one's best scientific understanding of the world.  One should take care never to distort scientific facts to fit one's beliefs."



# KEZHAYA LAW PLC

**MATTHEW A. KEZHAYA**
100 S. FIFTH STREET
19TH FLOOR
MINNEAPOLIS, MN 55402

P: (479) 431-6112
F: (479) 282-2892
MATT@KEZHAYA.LAW

667 F.3d 570, 576 (5th Cir. 2012), I think it falls short under the strict scrutiny analysis. Under the circumstances, a religious exemption to the requirements is reasonable and will obviate the need of expensive litigation.

I anticipate an argument that the abortion ritual is not "really" religious. That would be ill-advised. TST is a bona fide religion. <u>Satanic Temple v. City of Scottsdale</u>, No. CV18-00621-PHX-DGC, 2020 WL 587882 (D. Ariz. Feb. 6, 2020) (holding that TST is a bona fide religion). It is not a valid judicial inquiry to determine the plausibility of TST's Tenets or their application to the matter at hand. E.g. <u>Employment Div., Dep't of Human Res. of Oregon v. Smith</u>, 494 U.S. 872, 887, 110 S. Ct. 1595, 1604 (1990) ("Repeatedly and in many different contexts, we have warned that courts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim.") And the Texas Supreme Court has held that an activity can be religious for one person, even though that same activity can be secular for someone else. <u>Barr v. City of Sinton</u>, 295 S.W.3d 287, 300 (Tex. 2009) ("the fact that a halfway house can be secular does not mean that it cannot be religious.")

It is my understanding that Ms. Doe has an appointment scheduled for February 6, 2021. If litigation will be necessary to vindicate my client's rights, please let me know at your earliest convenience. If I do not hear that a religious exemption to Ms. Doe will be granted by **February 4, 2021 at 5:00 pm Central Time**, I will have to draft the complaint.

Sincerely,

Matthew A. Kezhaya