IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| THE SATANIC TEMPLE, INC. and ANN DOE<br><br>PLAINTIFFS,<br><br>V.<br><br>TEXAS HEALTH AND HUMAN SERVICES COMMISSION, and<br><br>CECILE YOUNG, in her official capacity as Executive Commissioner of the HEALTH AND HUMAN SERVICES COMMISSION<br>DEFENDANTS. | CASE NO. 4:21-CV-00387<br><br><br><br>JUDGE CHARLES ESKRIDGE |

### PLAINTIFFS' SECOND AMENDED COMPLAINT

COMES NOW Plaintiff The Satanic Temple ("**TST**"), by and through counsel Matthew A. Kezhaya (AR # 2014161, *pro hac vice* pending) of Kezhaya Law PLC, and Brad Ryynanen (TX # 24082520), of the Ryynanen Law Office PLLC with this, Plaintiffs' Second Amended Complaint seeking declaratory and injunctive relief.

### EXPLANATORY NOTE

1.   This complaint asks for judicial review of four Texas abortion regulations through the lens of religious liberty.   As further detailed below, TST and its membership holds religious beliefs and practices surrounding the abortive act which are entitled to protection from state interference under both Federal law and Texas law.

2.   Ann Doe is a member of TST who sought to engage in a religious ceremony culminating in the abortive act.   Texas abortion regulations interfered with this ceremony, raising constitutional suspicions.   As further detailed below, the regulations fail constitutional scrutiny and fail scrutiny under

the Texas Religious Freedom Restoration Act ("**TRFRA**.").

3.   TST sues on behalf of all its membership to the extent they are affected by the Texas regulations at issue.  Of particular importance are TST's membership who reside within 100 miles of a Texas abortion facility (i.e. they must undergo the waiting period), or who are financially disadvantaged (i.e. they are disproportionately impacted by the financial cost of the required sonogram).

## JURISDICTION AND VENUE

4.   This Court has subject matter jurisdiction over this case under 28 USC § 1331 (federal question) because TST complains of alleged constitutional violations under color of state law which are actionable under 42 USC § 1983 (authorizing a cause of action for such claims) and 28 USC § 2201 (authorizing declaratory judgments), both of which are federal laws. See also Ex parte Young, 209 U.S. 123 (1908).  Under Ex parte Young, State officials like Cecile Young who enforce an unconstitutional law are stripped of their official character and become merely another citizen who can constitutionally be brought before a court by a party seeking injunctive relief.

5.   This Court has supplemental jurisdiction over the TRFRA claim under 28 USC § 1367.  This state law claim is so related to the federal claims that it forms part of the same case or controversy.

6.   Texas has expressly waived its Eleventh Amendment immunity to suit for the TRFRA claim. See TEX. CIV. PRAC. & REM. CODE § 110.008.

7.   This Court has general personal jurisdiction over Defendants because they all exist or regularly conduct business within this District.  This Court has specific personal jurisdiction over Defendants because the situs of the injury sought to be avoided will take place in this District and it is reasonable to exercise jurisdiction here because the relevant facility is located within this District.

8.   Venue properly lies with this Court under 28 USC § 1391(b) because the conduct complained

of happened in this Court's District.

## PARTIES

9.   **The Satanic Temple, Inc.**, plaintiff, (abbreviated to "**TST**") is a famous IRS-recognized atheistic religious corporation with its principal place of business in Salem, Massachusetts.   TST's membership exceeds 270,000 and was recently the subject of the acclaimed film, "Hail Satan?" (2019, Magnolia Films).   See also Satanic Temple v. City of Scottsdale, No. CV18-00621-PHX-DGC, 2020 WL 587882 (D. Ariz. Feb. 6, 2020) (holding that TST is a bona fide religion).   TST's membership can be found in every state, including Texas.   TST venerates (but does not worship) the biblical adversary as a promethean icon against tyranny.   For TST and its membership, the Satan described in Paradise Lost and like works is a revolutionary antihero who stood up against impossible odds to seek justice and egalitarianism for himself and others.   TST propagates its Seven Tenets:

(1)   One should strive to act with compassion and empathy toward all creatures in accordance with reason.

(2)   The struggle for justice is an ongoing and necessary pursuit that should prevail over laws and institutions.

(3)   One's body is inviolable, subject to one's own will alone.

(4)   The freedoms of others should be respected, including the freedom to offend.   To willfully and unjustly encroach upon the freedoms of another is to forgo one's own.

(5)   Beliefs should conform to one's best scientific understanding of the world.   One should take care never to distort scientific facts to fit one's beliefs.

(6)   People are fallible.   If one makes a mistake, one should do one's best to rectify it and resolve any harm that might have been caused.

(7)     Every tenet is a guiding principle designed to inspire nobility in action and thought. The spirit of compassion, wisdom, and justice should always prevail over the written or spoken word.

https://thesatanictemple.com/pages/about-us (last visited November 11, 2020).   One of TST's religious ceremonies is the Satanic Abortion Ritual, described in detail below.  TST sues on behalf of itself and its membership, seeking a declaratory judgment that TST's membership is entitled to a religious exemption to Texas abortion regulations whenever the regulations act as a substantial interference on the member's Satanic Abortion Ritual.

10. **Ann Doe**, plaintiff, sues anonymously because she wants to avoid the catastrophic side-effects from the controversy surrounding this case and the deeply personal nature of the subject of this dispute.  Doe was a pregnant woman at the time of filing the Original Complaint who resides at least 100 miles from the nearest abortion clinic, which is a facility in Houston, TX.  Doe is a TST member, and has been since before she became pregnant.  Doe wants to participate in TST's Satanic Abortion Ritual unrestrained by the Texas regulations described below.

11. The **Texas Health and Human Services Commission** (the "HHSC"), defendant, is the Texas agency responsible for enforcing the complained-of Texas abortion regulations.

12. **Cecile Young**, defendant, is the Executive Commissioner of the Texas  Health and Human Services Commission.  Ms. Young is being sued in her official capacity, only.

## STANDING

13. TST has direct standing because the complained-of regulations are anathema to TST's Satanic Abortion Ritual and TST's Seven Tenets.

14. TST also has associational standing to present the claims of other members, similarly situated to Ms. Doe, who want to participate in the Satanic Abortion Ritual but are impacted by the  regulations

at issue.

15. TST's organizational purposes include litigating to protect the religious liberty rights of TST's membership.  Thus, this lawsuit is germane to TST's organizational purposes.

16. Due to the cost of litigation and the short window between "unripe" abortion claims and "moot" ones, these members cannot vindicate their own rights.

17. Their participation is not "necessary" to the litigation, even though some of them may provide testimony or documentary evidence, because only enough participation to show a pattern is needed. See Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd., 627 F.3d 547 (5th Cir. 2010).

18. TST thus sues, both directly and on behalf of its affected membership, for an order to require the HHSC to create a mechanism for seeking an exemption to these regulations insofar as they substantially interfere with the Satanic Abortion Ritual.

## FACTS ALLEGED

19. Ms. Doe was a pregnant woman at the time the Original Complaint was filed and a TST member who wanted to participate in TST's Satanic Abortion Ritual but was forced to comply with certain regulations to which she had a religious objection.

## What makes TST's abortion ritual "religious"

20. Part of this case will require proving that Ms. Doe's decision to engage in the Satanic Abortion Ritual is meaningfully different than getting a secular abortion.

21. That requires some important background on what it means to be "Satanic."

22. The following is not an invitation to litigate the truth, the reasonableness, or the centrality of the Display to TST's beliefs or practices.  E.g. Employment Div., Dep't of Human Res. of Oregon v. Smith, 494 U.S. 872, 887, 110 S. Ct. 1595, 1604 (1990) ("Repeatedly and in many different contexts, we have warned that courts must not presume to determine the place of a particular belief in a religion

or the plausibility of a religious claim.")

23. TST shares with all other Satanic groups a veneration for the biblical concept *ha satan* (literally: "the adversary" or "the accuser.")

24. *Ha satan* is a description of being, not a particular individual.

25. Satanism, broadly, can be roughly divided into "nontheistic" and "theistic" groups.

26. Nontheistic Satanists venerate the concept of the Biblical Satan and may participate in ritual, but do not literally worship the divine entity that Christians identify as "The Devil" and do not have any expectation that participating in ritual, by itself, will affect the outside world.

27. Ritual is not useless to a nontheistic Satanist, however.  Ritual has a powerful and studied effect on the subjective experience of the participants.  Hobson NM, Schroeder J, Risen JL, Xygalatas D, Inzlicht M. *The Psychology of Rituals: An Integrative Review and Process-Based Framework.* Personality and Social Psychology Review. 2018;22(3):260-284. doi:10.1177/1088868317734944.

28. TST is a nontheistic branch of Satanism.  This is enshrined in TST's Fifth Tenet ("Beliefs should conform to one's best scientific understanding of the world.  One should take care never to distort scientific facts to fit one's beliefs"), which posits that beliefs and actions should be guided by scientific consensus, not tradition or superstition.

29. Theistic Satanists differ from nontheistic Satanists by taking the extra step to literally worship a deity that Christians identify as "The Devil."  If they participate in ritual magic, a theistic Satanist will believe that the ritual, by itself, causes an effect on objective reality.

30. Satanists–nontheistic or otherwise–believe that authority is to be rebelled against ("accused") if it is tyrannical.

31. When something becomes "tyranny" is the subject of TST's religious doctrine.  Suffice it to say that TST finds that the regulations at issue are "tyranny."

32. This is an inversion of Christian norms, which holds that authority–particularly divine authority–is not to be questioned.

33. Another Satanic inversion of Christian norms is the balance of perceived importance between the self and the outside world.

34. To Satanists, the self should be assigned a greater importance than the outside world, relative to the Christian norm that, for example, the outside world (God and the Church) may freely dictate the thoughts and actions of the subordinate adherents.

35. TST's membership does not subscribe to humility as a virtue and self-deprecation as a lifestyle. TST's membership does not denigrate desires and practices that they enjoy which does not harm others.

36. TST has enshrined this belief in the Third Tenet ("One's body is inviolable, subject to one's own will alone.")

37. Other common applications of bodily inviolability include a religious objection against corporeal punishment of minors, a liberal view on body modification, and unwavering acceptance of the LGBTQ+ community.

38. TST and its membership are nontheistic Satanists, with an added influence by the philosophy of the Enlightenment Thinkers.

39. The core philosophy behind TST's Satanism is in propounding those elemental propositions that–we believe–all nontheistic Satanists can agree upon: the pursuit of "justice" and "empathy" is "good" and our worldview should be determined exclusively by reason, with room to grow or change based on new evidence.

40. In this worldview, TST shares much with the Founding Fathers.  This great nation began as an act of insurrection against a tyrant-king who claimed divine authority.  The Founding Fathers

pursued justice and egalitarianism for all. Replace George Washington with Satan, and TST's membership sees no substantive difference.

41. TST's membership holds the Founding Fathers and the Constitution in high esteem.

42. But despite holding these ideals in the highest esteem, TST makes no claim to having the "highest ideal" or "divine truth," and will vigorously defend religious freedom in its many forms.

43. This commitment to pluralism is rooted in a profound respect for the individual but is accompanied by an unflinching demand for reciprocity.

44. As addressed above, many of TST's membership believe that ritual can have an important place in the life of its adherents.

45. Other than the Satanic Abortion Ritual, TST's membership engages in destruction rituals (ceremonious destruction of items with symbolic meaning), the Unbaptism (ceremonious casting off of religious indoctrination), various meditations and mantras, and sex magic. See generally Shiva Honey, The Devil's Tome: A Book of Modern Satanic Ritual (Serpentīnae, March 25, 2020).

46. There are other rituals, too. The point is that the Satanic Abortion Ritual is not an end-run around abortion regulations.

47. TST developed the Satanic Abortion Ritual to help its membership cast off guilt, shame, and mental discomfort that the member may be experiencing in connection with their election to abort the pregnancy. See Exhibit A.

48. The Ritual also confirms the member's choice and wards off effects of unjust persecution. Id.

49. Here, the unjust persecution is an improper effort of the State (the "outside world") to infringe on the decision-making of a member about her own health decision (the "inside world.")

50. This tension is recognized as a secular legal issue. See Planned Parenthood of Se. Pennsylvania v. Casey, 505 U.S. 833, 852, 112 S. Ct. 2791, 2807, 120 L. Ed. 2d 674 (1992) (recognizing a woman's

right to choose as originating from the "zone of conscience and belief.")

51. But for TST's membership (including Ms. Doe), it is more than a simple privacy interest.

52. For plaintiffs, the State's intrusion into a member's decision about their own body is a tyrant overpowering resistance to compel beliefs and actions.  It's an abuse of power.

53. Not only is it an abuse of power, but the political rhetoric surrounding abortion is notably religious.

54. So, from the perspective of a Satanist, abortion regulations place the State in the role of a tyrant-king who claims divine authority to in an effort to make the Satanist feel guilt, doubt, and shame on an issue of religious significance.  This is deeply offensive to those who subscribe to the Third Tenet.

55. The Satanic Abortion Ritual was created to combat those efforts and, for TST's membership, it is empowering to assert or re-assert (as appropriate) power and control over their own mind and body.

56. To implement the Satanic Abortion Ritual, it depends on the nature of the abortion.

57. For surgical abortions:

> Immediately before receiving any anesthetic or sedation, look at your reflection to be reminded of your personhood and responsibility to yourself.  Focus on your intent, take deep breaths, and make yourself comfortable.  When you are ready, say the Third Tenet aloud.  The surgery can now begin.  During the operation, take another deep breath and recite the Fifth Tenet.  Immediately after the surgery, return to your reflection and recite the personal affirmation.  Feel the doubts dissipating and your confidence growing as you have just undertaken a decision that affirms your autonomy and free will.  The religious abortion is now complete.

**EXHIBIT A** at p. 4.

58. For medical abortions:

> Immediately before taking the medication(s) to terminate your pregnancy, look at your reflection to be reminded of your personhood and responsibility to yourself. Focus on your intent, take deep breaths, and make yourself comfortable. When you are ready, read the Third Tenet aloud to begin the ritual. After swallowing the medication(s), take another deep breath and recite the Fifth Tenet. After you have passed the embryo, return to your reflection and recite the personal affirmation. Feel the doubts dissipating and your confidence growing as you have just undertaken a decision that affirms your autonomy and free will. The religious abortion is now complete.

Id.

## Ms. Doe needs an exemption

59. The last day of a woman's period is used as the date to mark the beginning of pregnancy.

60. December 5, 2020 was the last day of Ms. Doe's period.

61. Ms. Doe learned that she was pregnant on January 13, 2021.

62. After that, Ms. Doe considered her options and then resolved to abort the pregnancy.

63. Ms. Doe also resolved to use the Satanic Abortion Ritual for its intended purposes.

64. Ms. Doe lives more than 100 miles from any nearby abortion facilities.

65. The closest facility to Ms. Doe is a facility in Houston, Texas.

66. Ms. Doe reached out to the facility to arrange for her medical appointments.

67. Through the course of her communications with the facility, Ms. Doe learned of certain abortion regulations which act as an impediment to Ms. Doe being able to participate in the Ritual.

68. Ms. Doe takes issue with the following regulations:

   (a) A requirement to have a sonogram as a precondition of obtaining an abortion,

   (b) A forced decision to reject the "opportunity" of seeing the sonogram results,

   (c) The forced listening to a narrative of the sonogram results, and

   (d) A mandatory waiting period between the sonogram and receiving the abortion.

See TEX. HEALTH & SAFETY CODE § 171.012(a)(4) and (5) and TEX. HEALTH & SAFETY CODE § 171.0122.

69. Ms. Doe perceives no medical basis for Texas to require a sonogram before an abortion.  See Dr. Jen Russo, "Mandated Ultrasound Prior to Abortion" *Virtual Mentor*. 2014;16(4):240-244. doi: 10.1001/virtualmentor.2014.16.4.ecas1-1404.

70. Plaintiffs object to the sonogram requirement as violative of the Fifth Tenet.

71. There being no medical need for the sonogram, Plaintiffs object to the related regulations (forced rejection of the "opportunity" to see the results, the forced listening of the narrative explanation, and the mandatory waiting period) all as violative of the Third and Fifth Tenets.

72. These requirements' sole apparent purpose is to influence some patients away from the abortion and toward childrearing.  See Gatter M, Kimport K, Foster DG, Weitz TA, Upadhyay UD. Relationship between ultrasound viewing and proceeding to abortion. *Obstet Gynecol*. 2014;123(1):81-87.

73. As explained above, Plaintiffs object as violative of the Third Tenet to these requirements as efforts to control the decisions a pregnant TST member makes for herself and her body.

74. Additionally, the requirement of a sonogram increases the financial cost of the abortion.

75. For Ms. Doe, the sonogram makes the abortion cost $150 more.

76. Ms. Doe has limited financial resources, so the $150 is disproportionately impactful.

77. Ms. Doe was forced to expend her limited funds on a medical procedure which she objects to.

78. By regulating the abortive act and refusing to grant exemptions for the Satanic Abortion Ritual, the State placed a barrier between Ms. Doe and her ceremony.

79. On January 22, 2021, Ms. Doe's religious beliefs compelled her to seek a religious exemption

to these regulations: both because the regulations violate her beliefs and because they substantially interfere with the Satanic Abortion Ritual.

80. The facility refused to grant it.

81. Neither Ms. Doe nor TST fault the facility.

82. As written, the regulations do not provide for religious exemptions.

83. If the facility had granted Ms. Doe a religious exemption, the facility would incur sanctions from the HHSC.

84. Through counsel, Ms. Doe issued a TRFRA demand letter to the HHSC  **EXHIBIT B**.

85. The HHSC did not grant a religious exemption.

86. Ms. Doe's appointment was on February 6, 2021.

87. Being within the first trimester, the fetus was nonviable.

88. Absent the relief prayed for below, Ms. Doe's religious objections were overrun and her participation in the Satanic Abortion Ritual was substantially interfered with.

## CAUSES OF ACTION

### Count 1
Hybrid Free Speech / Free Exercise claim

89. The Free Exercise Clause prohibits the Government from making a law "prohibiting the free exercise" of religion.  U.S. Const. amend. I; see also <u>Cantwell v. Connecticut</u>, 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940) (the First Amendment prohibition is applicable to the States as incorporated into the Fourteenth Amendment).

90. The Free Speech Clause prohibits the Government from "abridging the freedom of speech." Id.

91. The First Amendment, which includes the Free Speech and Free Exercise Clauses, was drafted

---

Complaint                                                                                    Page 12 of 19

to protect against political division along religious lines. Lemon v. Kurtzman, 403 U.S. 602, 622, 91 S. Ct. 2105, 2116, 29 L. Ed. 2d 745 (1971).

92. To that end, the Free Exercise Clause prohibits governmental restraint on the free exercise of religion. U.S. Const. Amend. I ("Congress shall make no law . . . prohibiting the free exercise [of religion]"); Braunfeld v. Brown, 366 U.S. 599, 607, 81 S. Ct. 1144, 1148 (1961) ("If the purpose *or effect* of a law is to . . . discriminate invidiously between religions, that law is constitutionally invalid even though the burden may be characterized as being only indirect") (emphasis added); see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 534, 113 S. Ct. 2217, 2227, 124 L. Ed. 2d 472 (1993) ("Facial neutrality is not determinative.")

93. Likewise, the Free Speech Clause prohibits governmental suppression of expression– particularly to include religious expression. Capitol Square Review and Advisory Bd. v. Pinette, 515 U.S. 753, 760 (1995) ("government suppression of speech has so commonly been directed *precisely* at religious speech that a free-speech clause without religion would be Hamlet without the prince.") (emphasis in original)

94. By officiating the Satanic Abortion Ritual, Ms. Doe (and TST's similarly situated members) will be uttering religiously charged speech and will be engaging in religious conduct.

95. Texas places barriers between Ms. Doe (and TST's similarly situated members) and this religious speech and conduct by first requiring she undergo a medically unnecessary operation, requiring she reject the "opportunity" to see the results of the imaging, requiring she listen to the narrative of and results of the imaging, and requiring she wait.

96. As applied to Ms. Doe (and TST's similarly situated members), these regulations are constitutionally suspect barriers between an officiant and their religious speech and conduct.

97. Therefore, the complained-of regulations are constitutionally suspect and must survive strict

scrutiny under <u>Braunfield</u>.

98. Pursuant to 42 USC § 1983 and 28 USC § 2201, the Court should declare these regulations unconstitutional as applied to Ms. Doe and TST's similarly situated members because they "abridge" or "prohibit the free exercise" of religious speech and conduct.

99. The Court should issue permanent injunctions (1) barring the HHSC from enforcing this regulation in a manner that interferes with TST's Satanic Abortion Ritual and (2) requiring the HHSC to develop a mechanism to accommodate TST's Satanic Abortion Ritual.  42 USC § 1983 (authorizing injunctive relief).

## **Count 2**
### Equal Protection

100. The Fourteenth Amendment prohibits Texas from disparately treating similarly situated classes of people.  <u>Plyler v. Doe</u>, 457 U.S. 202, 216-17, 102 S. Ct. 2382, 2394 (1982); see also U.S. Const. Amend. XIV ("nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws.")

101. When a regulation disadvantages a suspect class or the exercise of a fundamental right, like the free exercise of religion, the regulation is presumptively unconstitutional and must be justified by a showing that the regulation is precisely tailored to a compelling governmental interest.  <u>Id.</u>

102. Or, when "important but not fundamental" rights are impacted, the governmental regulation must be justified by a showing of a substantial interest which is closely related to the regulation.  <u>Id.</u>; see also <u>District of Columbia v. Heller</u>, 554 U.S. 570 at fn. 27 (2008) (rejecting the rational basis test because, otherwise, constitutional guarantees would be "redundant with the separate constitutional prohibition on irrational laws.")

103. At issue under this count is the "narrative" regulation.  TEX. HEALTH & S §

---

171.0122(d).

104.     The "narrative" regulation delineates between two classes of pregnant women who don't want to listen to the narrative of the result:

105.     On the one hand: victims of a sexual crime, minors with a judicial bypass, and women pregnant with a fetus with an irreversible medical condition or abnormality; and

106.     All other pregnant women, importantly to include those who intend to participate in TST's Satanic Abortion Ritual.

107.     Both are similarly situated in that they are pregnant and don't want to listen to the narrative of the result.

108.     But the regulation only permits the former camp to reject the narrative.

109.     The latter camp must suffer through the explanation.

110.     This regulation must survive strict scrutiny.  It impacts the fundamental right of free exercise of religion because Ms. Doe and TST's similarly situated members intend to participate in the Satanic Abortion Ritual without first listening to the narrative.

111.     Alternatively, it must survive intermediate scrutiny because it impacts the Fourteenth Amendment's right to choose.

112.     Pursuant to 42 USC § 1983 and 28 USC § 2201, the Court should declare this regulation unconstitutional as applied to Ms. Doe and TST's similarly situated members because it fails to accommodate a religious exemption.

113.     The Court should issue permanent injunctions (1) barring the HHSC from enforcing this regulation in a manner that interferes with TST's Satanic Abortion Ritual and (2) requiring the HHSC to develop a mechanism to accommodate TST's Satanic Abortion Ritual.  42 USC § 1983 (authorizing injunctive relief).

## Count 3
### Violation of Casey

114.     The Fourteenth Amendment prohibits Texas from enacting an "undue burden" on a nonviable fetus, i.e. an "a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus." Planned Parenthood of Se. Pennsylvania v. Casey, 505 U.S. 833, 877, 112 S. Ct. 2791, 2820, 120 L. Ed. 2d 674 (1992); see also U.S. Const. amend XIV § 1 ("nor shall any State deprive any person of life, liberty, or property, without due process of law").

115.     By requiring a sonogram before Ms. Doe can get an abortion, the State has imposed an "undue burden" on Ms. Doe's decision to seek an abortion of a nonviable fetus.

116.     The financial requirement attending the sonogram is an "undue burden." Cf. Texas Med. Providers Performing Abortion Servs. v. Lakey, 667 F.3d 570, 576 (5th Cir. 2012) (the Fifth Circuit has held that the sonogram, itself, is not an undue burden but did not address the financial costs of the sonogram).

117.     Pursuant to 42 USC § 1983 and 28 USC § 2201, the Court should declare the sonogram requirement unconstitutional as applied to Ms. Doe and TST's similarly situated members because it incurs an additional financial cost to the abortion.

118.     The Court should issue either of two permanent injunctions: (1) the HHSC is barred from enforcing this regulation; or (2) the HHSC shall pay all costs of the sonogram for Ms. Doe and TST's similarly situated members. 42 USC § 1983 (authorizing injunctive relief).

## Count 4
### Violation of TRFRA

119.     To some extent, the constitutional issues will need to overcome Employment Div., Dep't of Human Res. of Oregon v. Smith, 494 U.S. 872, 110 S. Ct. 1595 (1990) (holding that generally applicable rules that only impact free exercise, unaccompanied by evidence of an intention to prohibit

religious practices, need not survive strict scrutiny).

120.     Texas encoded the Texas Religious Freedom Restoration Act in response to Smith. See TEX. CIV. PRAC. & REM.CODE § 110.001 et seq. ("**TRFRA**").

121.     Under TRFRA, it is irrelevant that the regulations at issue are generally applicable and it is irrelevant whether the regulations were motivated by religious discrimination.  The applicable questions are (1) whether any of the regulations are a "substantial interference" with the free exercise of religion; and (2) if so, whether the regulations can survive strict scrutiny.  In other words, even if the State proves that its regulations are in furtherance of a compelling governmental interest, the State must also prove that the regulations are the least restrictive means of furthering that interest.

122.     Plaintiffs expect an argument that TST's Satanic Abortion Ritual cannot "really" be religious because other people engage in secular abortions.

123.     The Texas Supreme Court has already resolved this argument in favor of TST.  Barr v. City of Sinton, 295 S.W.3d 287, 300 (Tex. 2009) ("the fact that a halfway house can be secular does not mean that it cannot be religious.")

124.     The regulations are a substantial interference with Ms. Doe's and TST's similarly situated members because they place hurdles in front of religious speech and religious conduct.  The State might as well tax and regulate the act of prayer.

125.     The State must raise and prove a compelling interest and how the regulation is precisely tailored to it.

126.     Plaintiffs issued appropriate demand correspondence before filing this lawsuit. Exhibit B.

127.     The governmental infringement of Ms. Doe's–and, by association, TST's–religious liberty were "imminent" when the Original Complaint was filed because Ms. Doe's religious objections

were overrun on February 6, 2021.  Thus, the 60-day waiting period did not apply.  See TEX. CIV.

PRAC. & REM.CODE § 110.006(b).

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs pray for relief as follows.

1.   The Court should declare the regulations at issue unconstitutional as applied to Ms. Doe and

TST's similarly situated members.

2.   The Court should issue a permanent injunction against the HHSC to bar enforcement of the

regulations insofar as they substantially interfere with the Satanic Abortion Ritual.

3.   The Court should issue a permanent injunction against the HHSC to require the creation and

enforcement of regulations that accommodate the Satanic Abortion Ritual.

4.   The Court should order compensation to TST for costs and attorney's fees.  42 USC § 1983

and FRCP 54.

5.   And the Court should order all other relief to which it finds TST entitled.  FRCP 54(c).

Respectfully submitted,                    Date:   February 10, 2021

By:     /s/ Matthew A. Kezhaya
Attorney-in-charge (*pro hac vice* pending)
Matthew A. Kezhaya, ABA # 2014161
Kezhaya Law PLC
1202 NE McClain Road
Bentonville, AR 72712
P: 479-431-6112
Email: matt@kezhaya.law

    /s/ Brad Ryynanen
Brad Ryynanen
Texas Bar No. 24082520
The Ryynanen Law Office, PLLC
515 Centre Street, # 4471
Dallas, TX 75208
P: 214-972-8640
Email: brad@bdrlegal.com

## Exhibit list

A.  Religious abortion ritual pamphlet

B.  TRFRA demand letter

Exhibit A

# SATANIC ABORTION RITUAL

The Satanic Abortion Ritual is a destruction ritual that serves as a protective rite. Its purpose is to cast off notions of guilt, shame, and mental discomfort that a patient may be experiencing due to choosing to have a medically safe and legal abortion.

Even the most confident and unapologetic individual can experience uncomfortable feelings and anxiety for choosing to terminate their pregnancy. Laws in many states that impose waiting periods and state-mandated counseling can exacerbate these feelings, as can social condemnation and outright harassment by those who oppose abortion.



Misinformation about abortion and guilt for pursuing that option can be a lot to handle. It can be exhausting and frustrating to try to shrug off and dismiss internal and external pressures, especially those driven by religious convictions that disregard the beliefs and freedoms of others. Even when one recognizes that these criticisms are invalid, they can make an already troubling time even harder.

This ritual is intended to alleviate some of these stressors and empower the patient to be guided by the Third and Fifth Tenets when pursuing their decision.

The purpose of the ritual is not to persuade someone to have an abortion if they are undecided. Instead, the ritual serves to assist in confirming their decision and to ward off the effects of unjust persecution, which can cause one to stray from the paths of scientific reasoning and free will that TST members strive to embody.

# ABOUT THE RITUAL                    PREPARATIONS

TST's abortion ritual can be performed to address definable concerns or to overcome unproductive feelings.

The ritual, which includes the abortion itself, spans the entirety of the pregnancy termination procedure. There are steps to be performed before, during, and after the medical or surgical abortion.

Because rituals are deeply personal to those enacting them, there are variations in how it may be performed. The ritual can be personalized based on personal preferences and availability of materials. There is no need to purchase anything special or to adhere to every word. What is essential is the spirit and general intent.

One can also perform their favorite destruction ritual to target any of the unwanted feelings incited by adversity faced as a consequence of choosing to have an abortion. Feel free to take or leave whatever you wish from this one to build your own.

Before performing the ritual, you may choose to review the science about the safety and reality of abortion and the debunked claims from those who oppose abortion. You may also choose to read stories or listen to podcasts about people who made great sacrifices in the struggle to establish the reproductive rights we have today. These stories can be inspirational and may subdue stigmas you might feel from those who oppose abortion.

Your ability to choose to terminate a pregnancy is consistent with the ideals of liberty and freedom. Be proud of pursuing what you want for your life despite opposition.

## IMPLEMENTS

- A quiet space where you feel comfortable
- Something that allows you to see your reflection
- A copy of The Satanic Temple's third and fifth tenets and personal affirmation

# TENETS AND AFFIRMATIONS

## Tenet III
*One's body is inviolable, subject
to one's own will alone.*

## Tenet V
*Beliefs should conform to one's best
scientific understanding of the world.
One should take care never to distort
scientific facts to fit one's beliefs.*

## Personal Affirmation
*By my body, my blood
By my will, it is done.*



# PROCEDURES

**For medical abortions:**
Immediately before taking the medication(s) to terminate your pregnancy, look at your reflection to be reminded of your personhood and responsibility to yourself. Focus on your intent, take deep breaths, and make yourself comfortable. When ready, read the Third Tenet aloud to begin the ritual. After swallowing the medication(s), take another deep breath and recite the Fifth Tenet. After you have passed the embryo, return to your reflection, and recite the personal affirmation. Feel the doubts dissipating and your confidence growing as you have just undertaken a decision that affirms your autonomy and free will. The religious abortion ritual is now complete.

**For surgical abortions:**
Immediately before receiving any anesthetic or sedation, look at your reflection to be reminded of your personhood and responsibility to yourself. Focus on your intent, take deep breaths, and make yourself comfortable. When you are ready, say the Third Tenet aloud. The surgery can now begin. During the operation, take another deep breath and recite the Fifth Tenet. Immediately after the surgery, return to your reflection and recite the personal affirmation. Feel the doubts dissipating and your confidence growing as you have just undertaken a decision that affirms your autonomy and free will. The religious abortion ritual is now complete.



# Exhibit B

# KEZHAYA LAW PLC



MATTHEW A. KEZHAYA
100 S. FIFTH STREET
19TH FLOOR
MINNEAPOLIS, MN 55402

P: (479) 431-6112
F: (479) 282-2892
MATT@KEZHAYA.LAW

February 1, 2021

Civil Rights Office
Health and Human Services Commission
701 W. 51st Street, MC W206
Austin, Texas 78751
   By certified mail, return receipt requested
   And by email to: HHSCivilRightsOffice@hhsc.state.tx.us

Planned Parenthood Center for Choice, Inc.
4600 Gulf Freeway, Ste. 300
Houston, TX  77023
   By email to Tram.Nguyen@ppgulfcoast.org

Re: <u>TST v. Tx. Health and Human Serv's. Comm. and Planned Parenthood</u> – demand letter

To whom it may concern,

I represent The Satanic Temple, Inc. ("**TST**") and an anonymous pregnant member who desires an abortion ("**Ann Doe**") in a potential dispute surrounding my clients' demand for a religious exemption to the following Texas abortion regulations:

- medically unnecessary sonogram precondition of obtaining an abortion,

- a forced decision to reject the "opportunity" of seeing the sonogram results,

- the forced listening to a narrative of the sonogram results, and

- a mandatory waiting period between the sonogram and the abortion.

TEX. HEALTH & S § 171.012.  The abortion is to be performed by the Planned Parenthood facility addressed above.  The facility has refused to provide a religious exemption to the sonogram requirement, which is enforced by the Texas Health and Human Services Commission.

This letter is a demand for a religious exemption to the sonogram requirement.  TEX. CIV. PRAC. & REM.CODE § 110.006.  I use the word "demand" in the legal sense; i.e. only as the assertion of a legal right, without connoting any ill will.  If this matter does turn to litigation, please know that TST and Ms. Doe both support the mission of Planned Parenthood and understand its obligation to adhere to applicable Texas law and regulations.

The primary legal basis for the religious exemption is the Texas Religious Freedom Restoration Act ("**TRFRA**") encoded at TEX. CIV. PRAC. & REM.CODE § 110.001 *et seq.*  Under TRFRA, the government "may not substantially burden a person's free exercise of religion [unless it] demonstrates that the application of the burden to the person . . . is in furtherance of a compelling governmental



# KEZHAYA LAW PLC

**MATTHEW A. KEZHAYA**
100 S. FIFTH STREET
19TH FLOOR
MINNEAPOLIS, MN 55402

P: (479) 431-6112
F: (479) 282-2892
MATT@KEZHAYA.LAW

interest; and . . . is the least restrictive means of furthering that interest." <u>Barr v. City of Sinton</u>, 295 S.W.3d 287, 296 (Tex. 2009) (quoting TEX. CIV. PRAC. & REM.CODE § 110.003(a)-(b)).

Ms. Doe will be participating in an abortion ritual. The details of the ritual are enclosed with this email. Importantly, the abortion ritual (1) requires an abortion; and (2) affirms her religious subscription to TST's Third and Fifth Tenets.[1,2] But before Ms. Doe can get her abortion–and therefore participate in the abortion ritual–the government has required that she get a sonogram. TEX. HEALTH & S § 171.012(a)(4) and (5).

The requirements substantially interfere with Ms. Doe's religious beliefs and practices for two reasons. First, the requirements are a precondition to Ms. Doe's ability to participate in a religious ceremony. It is a substantial interference per se for the State to place a regulatory hurdle–one that costs money–in front of a religious exercise. The State might as well tax and regulate Mass.

Second, the requirements violate her sincerely-held religious beliefs. As stated above, Ms. Doe's sincerely-held religious beliefs are that (1) her actions are to be rooted in peer-reviewed scientific consensus; and (2) her bodily autonomy is inviolable. These requirements violate both Tenets.

There is no medical basis for Texas to require a sonogram before an abortion. See Dr. Jen Russo, "Mandated Ultrasound Prior to Abortion" *Virtual Mentor*. 2014;16(4):240-244. doi: 10.1001/virtualmentor.2014.16.4.ecas1-1404. Its sole apparent purpose is to influence some patients away from the abortion and toward childrearing. See Gatter M, Kimport K, Foster DG, Weitz TA, Upadhyay UD. Relationship between ultrasound viewing and proceeding to abortion. *Obstet Gynecol*. 2014;123(1):81-87.

The requirement that Ms. Doe be presented with the "opportunity" to see the sonogram images and hear the heart auscultation is a transparent effort to infringe upon Ms. Doe's zone of conscience. There is no subtlety to the State's position, communicated through these requirements, that Ms. Doe should feel doubt, guilt, and shame about her decision to have this abortion. See <u>Planned Parenthood of Se. Pennsylvania v. Casey</u>, 505 U.S. 833, 852, 112 S. Ct. 2791, 2807, 120 L. Ed. 2d 674 (1992).

I acknowledge Texas's efforts to minimize the intrusion on Ms. Doe's zone of conscience. She can, after all, reject the "opportunity" to see the sonogram images and hear the heart auscultation. TEX. HEALTH & S § 171.0122. But there is no mechanism for her to reject the opportunity to receive the verbal explanation of the results. Id. It strains imagination why the victim of a sexual assault can waive this requirement, but someone with a religious objection cannot. The same is true for the waiting period between sonogram and abortion. TEX. HEALTH & S § 171.012. There is no credible basis for this period except to intrude on Ms. Doe's conscience.

Because these requirements have no basis in science, they violate the Fifth Tenet. Because the unifying purpose of all these requirements is to undermine Ms. Doe's decision for her health and her

---

[1] The Third Tenet is "One's body is inviolable, subject to one's own will alone."
[2] The Fifth Tenet is "Beliefs should conform to one's best scientific understanding of the world. One should take care never to distort scientific facts to fit one's beliefs."



**KEZHAYA LAW PLC**

MATTHEW A. KEZHAYA
100 S. FIFTH STREET
19TH FLOOR
MINNEAPOLIS, MN 55402

P: (479) 431-6112
F: (479) 282-2892
MATT@KEZHAYA.LAW

future, they violate the Third Tenet.

Based on the foregoing, these requirements substantially interfere with Ms. Doe's religious beliefs and practices. Thus, it must survive the strict scrutiny test. While it has been established that this statute survives intermediate scrutiny, see <u>Texas Med. Providers Performing Abortion Servs. v. Lakey</u>, 667 F.3d 570, 576 (5th Cir. 2012), I think it falls short under the strict scrutiny analysis. Under the circumstances, a religious exemption to the requirements is reasonable and will obviate the need of expensive litigation.

I anticipate an argument that the abortion ritual is not "really" religious. That would be ill-advised. TST is a bona fide religion. <u>Satanic Temple v. City of Scottsdale</u>, No. CV18-00621-PHX-DGC, 2020 WL 587882 (D. Ariz. Feb. 6, 2020) (holding that TST is a bona fide religion). It is not a valid judicial inquiry to determine the plausibility of TST's Tenets or their application to the matter at hand. E.g. <u>Employment Div., Dep't of Human Res. of Oregon v. Smith</u>, 494 U.S. 872, 887, 110 S. Ct. 1595, 1604 (1990) ("Repeatedly and in many different contexts, we have warned that courts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim.") And the Texas Supreme Court has held that an activity can be religious for one person, even though that same activity can be secular for someone else. <u>Barr v. City of Sinton</u>, 295 S.W.3d 287, 300 (Tex. 2009) ("the fact that a halfway house can be secular does not mean that it cannot be religious.")

It is my understanding that Ms. Doe has an appointment scheduled for February 6, 2021. If litigation will be necessary to vindicate my client's rights, please let me know at your earliest convenience. If I do not hear that a religious exemption to Ms. Doe will be granted by Wednesday, **February 3, 2021 at 5:00 pm Central Time**, I will have to begin drafting the complaint.

My study of the facts and law in this matter is incomplete. As a result, the above may not fully encapsulate all the arguments which will be at issue in the potential litigation. Nothing in this letter waives any rights of either of my clients.

Sincerely,

Matthew A. Kezhaya