# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| THE SATANIC TEMPLE, INC. and ANN DOE, | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | |
| TEXAS HEALTH AND HUMAN SERVICES COMMISSION and CECILE YOUNG, in her official capacity as Executive Commissioner of the HEALTH AND HUMAN SERVICES COMMISSION, | § § § § § § § | Civil Action No. 4:21-cv-00387 |
| *Defendants.* | § § | |

## DEFENDANTS' MOTION TO DISMISS
## PURSUANT TO RULES 12(B)(1) AND 12(B)(6)

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil
Litigation

THOMAS A. ALBRIGHT
Chief, General Litigation Division

CHRISTOPHER D. HILTON
Deputy Chief, General Litigation Division

BENJAMIN S. WALTON
Assistant Attorney General
General Litigation Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548

***Counsel for Defendants***

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. ii

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION AND STATEMENT OF THE ....................................................... 1

NATURE AND STAGE OF THE PROCEEDING ..................................................... 1

BACKGROUND AND STATEMENT OF FACTS ..................................................... 1

    I.    The Challenged Statutes and the Texas Health and Safety Code ........................... 1

    II.   The Satanic Abortion Ritual ................................................................................. 3

    III.  Plaintiffs ............................................................................................................... 4

STATEMENT OF THE ISSUES REQUIRING RESOLUTION ................................ 5

STANDARD OF REVIEW ........................................................................................... 5

SUMMARY OF THE ARGUMENT ............................................................................ 6

ARGUMENT .................................................................................................................. 6

    I.    The Court Lacks Jurisdiction ................................................................................ 6

        A.  Doe Lacks Standing ......................................................................................... 6

            1.    Injury-in-Fact ........................................................................................... 7

            2.    Traceability ............................................................................................... 8

            3.    Redressability ........................................................................................... 9

        B.  TST Lacks Standing ......................................................................................... 9

        C.  Defendants Are Immune ................................................................................ 11

    II.   Plaintiffs Have Failed to State a Claim .............................................................. 12

        A.  Count 1: Hybrid Free Speech/Free Exercise Claim ...................................... 12

        B.  Count 2: Equal Protection .............................................................................. 14

        C.  Count 3: Violation of *Casey* ........................................................................ 17

        D.  Count 4: Violation of TRFRA ...................................................................... 18

CONCLUSION ............................................................................................................ 19

CERTIFICATE OF CONFERENCE ......................................................................... 20

CERTIFICATE OF COMPLIANCE ......................................................................... 21

CERTIFICATE OF SERVICE .................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................... 5

*Barnes v. Moore,*
    970 F.2d 12 (5th Cir. 1992) ............................................................................... 2

*Castro v. United States,*
    No. 4:20-cv-03128, 2021 WL 1393857 (S.D. Tex. Apr. 13, 2021) ....................... 5, 6, 7

*Chalifoux v. New Caney Indep. Sch. Dist.,*
    976 F. Supp. 659 (S.D. Tex. 1997) .................................................................. 14

*City of Austin v. Paxton,*
    943 F.3d 993 (5th Cir. 2019) ........................................................................... 11

*City of Cleburne, Texas v. Cleburne Living Ctr.,*
    473 U.S. 432 (1985) .................................................................................. 15, 16

*Coury v. Prot,*
    85 F.3d 244 (5th Cir. 1996) .............................................................................. 5

*Ctr. for Inquiry, Inc. v. Warren,*
    845 F. App'x 325 (5th Cir. 2021) ...................................................................... 9

*Employment Division v. Smith,*
    494 U.S. 872 (1990) ........................................................................................ 14

*Envt. Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.,*
    968 F.3d 357 (5th Cir. 2020) ............................................................................. 9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) .......................................................................................... 7

*Gentilello v. Rege,*
    627 F.3d 540 (5th Cir. 2010) ....................................................................... 6, 18

*Greenville Women's Clinic v. Bryant,*
    222 F.3d 157 (4th Cir. 2000) ....................................................................... 17, 18

*Harris v. McRae,*
    448 U.S. 297 (1980) ........................................................................................ 16

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ...................................................................................... 7, 11

*Maher v. Roe,*
    432 U.S. 464 (1977) ........................................................................................ 17

*Miss. State Democratic Party v. Barbour*,
529 F.3d 538 (5th Cir. 2008) .......................................................................... 7

*Mitchell v. Bailey*,
982 F.3d 937 (5th Cir. 2020) .......................................................................... 5

*Okpalobi v. Foster*,
244 F.3d 405 (5th Cir. 2001) ........................................................................ 12

*Planned Parenthood of Central Missouri v. Danforth*,
428 U.S. 52 (1976).................................................................................... 2, 17

*Planned Parenthood of Se. Penn. v. Casey*,
505 U.S. 833 (1992)................................................................... 2, 13, 14, 17

*Raj v. La. State Univ.*,
714 F.3d 322 (5th Cir. 2013) ........................................................................ 11

*Simmons v. Smith*,
774 F. App'x 228 (5th Cir. 2019) ................................................................. 11

*Sonnier v. Quarterman*,
476 F.3d 349 (5th Cir. 2007) ........................................................................ 15

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016)..................................................................................... 7

*Tex. Democratic Party v. Benkiser*,
459 F.3d 582 (5th Cir. 2006) .......................................................................... 7

*Tex. Med. Providers Performing Abortion Servs. v. Lakey*,
667 F.3d 570 (5th Cir. 2012) ................................................................. passim

*United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*,
517 U.S. 544 (1996)....................................................................................... 10

*United States v. Galloway*,
951 F.2d 64 (5th Cir. 1992) .......................................................................... 16

*United States v. Lee*,
455 U.S. 252 (1982)....................................................................................... 14

*Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*,
454 U.S. 464 (1982)......................................................................... 8, 11, 13

*Village of Willowbrook v. Olech*,
528 U.S. 562 (2000)....................................................................................... 15

*Walker v. Beaumont Indep. Sch. Dist.*,
938 F.3d 724 (5th Cir. 2019) .......................................................................... 5

*Women's Med. Ctr. of Nw. Hous. v. Bell*,
248 F.3d 411 (5th Cir. 2001) ........................................................................ 17

**Statutes**

28 U.S.C. § 1367(c) ............................................................................................. 12

Tex. Civ. Prac. & Rem. Code § 110.008 ........................................................ 12, 18

Tex. Gov't Code § 531.021(a) ............................................................................ 11

Tex. Health & Safety Code § 171.012(a)(4)-(5) ........................................... 1, 2, 8

Tex. Health & Safety Code § 171.0122 ......................................................... 2, 16

Tex. Health & Safety Code § 171.0122(a)-(c) .................................................... 3

Tex. Health & Safety Code § 171.0122(d) ................................................... 3, 15

Tex. Health & Safety Code § 171.018 ........................................................... 3, 9

**Other Authorities**

"Church of Satan vs. Satanic Temple," The Satanic Temple,
  https://thesatanictemple.com/pages/church-of-satan-vs-satanic-temple (last visited May
  28, 2021) ...................................................................................................... 16

Acts 2011, 82d Leg., ch. 73 (H.B. 15), § 3 (effective Sept. 1, 2011)................................ 16

## INTRODUCTION AND STATEMENT OF THE
## NATURE AND STAGE OF THE PROCEEDING

Plaintiffs claim an unqualified right to exempt themselves from constitutional abortion regulations so they can participate in a Satanic Abortion Ritual unburdened by important State interests that they deem "tyrannical." Plaintiffs The Satanic Temple, Inc. ("TST") and Ann Doe object to certain informed consent statutes because they disagree with them as a matter of policy and scientific merit. But Plaintiffs lack standing to proceed and cannot overcome Defendants' sovereign immunity, and they have failed to state claims upon which relief can be granted.

Plaintiffs have filed a Second Amended Complaint ("Compl.") against the Texas Health and Human Services Commission ("HHSC") and its Executive Director Cecile Young. Defendants agreed to be substituted for the prior defendants and file this motion on May 28, 2021, so as not to disrupt the Court's existing schedule. Discovery is currently stayed pursuant to Court order. ECF No. 23.

## BACKGROUND AND STATEMENT OF FACTS

### I.      The Challenged Statutes and the Texas Health and Safety Code

Plaintiffs challenge two sections of the Texas Health and Safety Code, which they characterize as containing four requirements: (a) the requirement for a pregnant woman to undergo a sonogram prior to obtaining an abortion, (b) "[a] forced decision to reject the 'opportunity' of seeing the sonogram results," (c) "[t]he forced listening to a narrative of the sonogram results," and (d) the mandatory waiting period prior to the abortion procedure. Compl. ¶ 68 (citing Tex. Health & Safety Code §§ 171.012(a)(4)-(5),

1

171.0122).

The challenged statutes are part of the State's informed consent laws regarding abortion. These statutes further the State's "desirable and imperative" interest in ensuring that "[t]he decision to abort . . . be made with full knowledge of its nature and consequences." *Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52, 67 (1976). Section 171.012 sets the minimum standard for ensuring that consent to an abortion procedure is voluntary and informed, including *inter alia* the sonogram and waiting period requirements. "[T]he provision of sonograms and the fetal heartbeat are routine measures in pregnancy medicine today. They are viewed as 'medically necessary' for the mother and fetus." *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 579 (5th Cir. 2012). Likewise, "the waiting period is a reasonable measure to implement the State's interest in protecting the life of the unborn . . . that does not amount to an undue burden." *Planned Parenthood of Se. Penn. v. Casey*, 505 U.S. 833, 885 (1992); *see also Barnes v. Moore*, 970 F.2d 12, 14-16 (5th Cir. 1992).

Section 171.012 provides a minimum standard for providing informed and voluntary consent to an abortion at least 24 hours prior to the abortion (or 2 hours prior if the woman lives 100 miles or more away). Relevant here, these requirements include performing a sonogram, displaying the sonogram images, describing the sonogram verbally, and making audible the heartbeat of the fetus, if one is present. Tex. Health & Safety Code § 171.012(a)(4).

Section 171.0122 is a companion statute that allows a pregnant woman to choose not to view the required printed materials or sonogram images or not to hear the heart

2

auscultation. *See id.* § 171.0122(a)-(c). This statute also permits a pregnant woman to "choose not to receive the verbal explanation of the results of the sonogram images" if she falls into one of three categories: (1) her pregnancy is the result of a sexual assault, incest, or other crime; (2) she is a minor obtaining an abortion under the judicial bypass procedures; or (3) "the fetus has an irreversible medical condition or abnormality." *Id.* § 171.0122(d). A physician who violates the challenged statutes commits a misdemeanor under the Texas Penal Code punishable by a fine up to $10,000. *See id.* § 171.018.

## II.    The Satanic Abortion Ritual

According to Plaintiffs' Exhibit A, the Satanic Abortion Ritual "includes the abortion itself" and "spans the entirety of the pregnancy termination procedure." Compl. Ex. A at 22.[1] The Satanic Abortion Ritual is described as "personal" and variable, and "[w]hat is essential is the spirit and general intent." *Id.* In order to perform the Satanic Abortion Ritual when undergoing a surgical abortion, Satanists are given these procedures:

> Immediately before receiving any anesthetic or sedation, look at your reflection to be reminded of your personhood and responsibility to yourself. Focus on your intent, take deep breaths, and make yourself comfortable. When you are ready, say the Third Tenet aloud. The surgery can now begin. During the operation, take another deep breath and recite the Fifth Tenet. Immediately after the surgery, return to your reflection and recite the personal affirmation. Feel the doubts dissipating and your confidence growing as you have just undertaken a decision that affirms your autonomy and free will. The religious abortion ritual is now complete.

*Id.* at 24.

---

[1] Pagination refers to the ECF page number.

3

### III.    Plaintiffs

Plaintiffs allege that TST "is a famous IRS-recognized atheistic religious corporation with its principal place of business in Salem, Massachusetts." Compl. ¶ 9. TST and its members "venerate the concept of the Biblical Satan" as "a revolutionary antihero who stood up against impossible odds to seek justice and egalitarianism for himself and others." *Id.* ¶¶ 9, 26. Plaintiffs are clear that "TST is a nontheistic branch of Satanism." *Id.* ¶ 28. TST's membership also engages in "destruction rituals," "the Unbaptism," "various meditations and mantras," and "sex magic." *Id.* ¶ 45.

Plaintiffs allege that TST has associational standing to sue on behalf of its members. *Id.* ¶ 14. TST contends that it is suing "on behalf of all its membership to the extent they are affected by the Texas regulations at issue," particularly including "members who reside within 100 miles of a Texas abortion facility (i.e. they must undergo the [24-hour] waiting period), or who are financially disadvantaged (i.e. [allegedly] impacted by the financial cost of the required sonogram)." *Id.* ¶ 3. Plaintiffs also contend that "TST has direct standing because the complained-of regulations are anathema to TST's Satanic Abortion Ritual and TST's Seven Tenets." *Id.* ¶ 13; *see also id.* ¶ 31 ("Suffice it to say that TST finds that the regulations at issue are 'tyranny.'").

Ann Doe had an abortion appointment on February 6, 2021 and alleges that "her religious objections were overrun and her participation in the Satanic Abortion Ritual was substantially interfered with." Compl. ¶ 88. She sought an *ex parte* temporary restraining order from the Court, which was denied on the day of her appointment.

## STATEMENT OF THE ISSUES REQUIRING RESOLUTION

Defendants ask the Court to resolve whether (1) Plaintiffs have sufficiently demonstrated they have standing, (2) Plaintiffs have alleged facts to overcome Defendants' sovereign immunity, and (3) any of the counts in the Complaint state a claim upon which relief can be granted.

## STANDARD OF REVIEW

Rule 12(b)(1) governs motions to dismiss for a lack of subject-matter jurisdiction. "The party asserting jurisdiction bears the burden of proof and must establish, by a preponderance of the evidence, that the court has jurisdiction[.]" *Mitchell v. Bailey*, 982 F.3d 937, 940 (5th Cir. 2020). Indeed, "there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996); *see also Castro v. United States*, No. 4:20-cv-03128, 2021 WL 1393857, at *1 (S.D. Tex. Apr. 13, 2021).

Rule 12(b)(6) permits dismissal where a party fails to state a claim upon which relief could be granted. Dismissal is appropriate if a pleading fails to meet the requirements of Rule 8, which "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (internal quotation marks omitted). Likewise, "[courts] do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (internal quotation marks omitted).

## SUMMARY OF THE ARGUMENT

The Court lacks jurisdiction over Plaintiffs' claims because Plaintiffs have not established that they satisfy any of the elements of standing: they have not suffered any legally cognizable injury because their claimed religious beliefs do not conflict with the challenged statutes, their purported injuries are not fairly traceable to Defendants, and their injuries cannot be redressed in this litigation. Additionally, Plaintiffs cannot overcome Defendants' sovereign immunity, establish the applicability of the *Ex parte Young* exception, or assert their state-law claim in federal court.

Even if the Court had jurisdiction, Plaintiffs' claims are meritless. Plaintiffs have not and cannot state a viable claim under a First Amendment hybrid rights theory. Plaintiffs' Equal Protection claim is meritless under rational-basis review because no suspect classification is implicated. And Plaintiffs' *Casey* claim is foreclosed by controlling precedent. Accordingly, Plaintiffs' claims should be dismissed.

## ARGUMENT

### I.     The Court Lacks Jurisdiction.

#### A. Doe Lacks Standing.

Doe has not established that she has standing to bring any of her claims. To satisfy Article III standing, a plaintiff must show: (1) an injury-in-fact; (2) that is fairly traceable to the defendant's challenged conduct (causation); and (3) that is likely to be redressed by a favorable decision in the district court (redressability). *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *see also Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 585-86 (5th Cir. 2006). "[S]tanding is not created by a

declaration in court pleadings." *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008). "This means that the plaintiff must clearly allege ***facts*** at the pleading stage that demonstrate each criterion." *Castro*, 2021 WL 1393857, at *1 (emphasis added). Doe fails to establish each of these elements.

### 1. Injury-in-Fact

Doe has not suffered a legally cognizable injury. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Doe's alleged injury is that her "religious objections were overrun and her participation in the Satanic Abortion Ritual was substantially interfered with." Compl. ¶ 88. But this bare conclusion is not borne out by the factual allegations in the pleading.

Doe alleges that the challenged statutes violate the Third and Fifth Tenets of TST beliefs. *See, e.g.*, Compl. ¶¶ 70-73. The Third Tenet states that "[o]ne's body is inviolable, subject to one's own will alone," and the Fifth Tenet states that "[b]eliefs should conform to one's best scientific understanding of the world. One should take care never to distort scientific facts to fit one's beliefs." *Id.* ¶ 9. But Doe's religious exercise under the Third Tenet was not violated because she obtained an abortion procedure voluntarily—it was her choice. Doe does not allege that her sonogram was performed without her consent, and although she may have preferred not to receive one, "the provision of sonograms and the fetal heartbeat are routine measures in pregnancy medicine today" and "are viewed as

7

'medically necessary' for the mother and fetus." *Lakey*, 667 F.3d at 579. Likewise, Doe's religious exercise under the Fifth Tenet cannot possibly be violated by the challenged statutes, which do not require Doe to change her beliefs or "distort scientific facts" in any way; Doe remains free to disagree with all of the information provided to her pursuant to section 171.012(a)(4). But such disagreement "is not an injury sufficient to confer standing . . . even though the disagreement is phrased in constitutional terms." *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 485-86 (1982).

Doe's allegation that the Satanic Abortion Ritual itself was disrupted is also belied by her factual allegations. According to Exhibit A to the Complaint, the ritual begins "[i]mmediately before" the abortive act, with the woman looking at her reflection and focusing inward, repeating the Third and Fifth Tenets aloud, and taking deep breaths. Compl. Ex. A at 24. The ritual concludes shortly after the abortive act is completed. *Id.* The statutory informed consent requirements are completed ***well in advance*** of performing the abortion and did not require Doe to alter her religious practice in any way. Doe was not required to speak or prohibited from speaking, and she was presumably able to obtain her abortion. Accordingly, because Doe's own factual allegations directly negate her conclusory assertion that the laws at issue somehow conflict with her religious beliefs or free speech rights, Doe suffered no injury in fact.

### 2. Traceability

Even if Doe had suffered an injury, she has not alleged how it is traceable to Defendants. Traceability requires "something more than conjecture." *Envt. Tex. Citizen*

*Lobby, Inc. v. ExxonMobil Corp.*, 968 F.3d 357, 368 (5th Cir. 2020). Plaintiffs allude vaguely to HHSC's "responsib[ility] for enforcing the complained-of Texas abortion regulations," Compl. ¶ 11, but Plaintiffs do not describe a single "enforcement" action that either Defendant has ever taken. Doe alleges that she sent a demand letter to HHSC and that it "did not grant a religious exemption," *id.* ¶¶ 84-85, but Doe does not explain how HHSC could have done so. Plaintiffs have not alleged any actions by either of these Defendants that caused her purported injuries, so she fails the traceability requirement.

### 3. Redressability

The Court could not redress Doe's alleged injuries with an injunction against these Defendants. Even if Doe prevails in this litigation and obtains an injunction that requires HHSC to "bar enforcement of the regulations" and "require the creation and enforcement" of an accommodation for the Satanic Abortion Ritual, Compl. at 18, the physicians who perform abortions in Texas will still be subject to criminal prosecution. *See* Tex. Health & Safety Code § 171.018. Defendants have no connection to or control over any of the district attorneys or other prosecutors throughout Texas. Accordingly, "[a] favorable decision would not fully redress [Plaintiffs'] purported injury and eradicate the barrier to [performing the Satanic Abortion Ritual]." *Ctr. for Inquiry, Inc. v. Warren*, 845 F. App'x 325, 329 (5th Cir. 2021). Plaintiffs therefore "ask for relief that does not remedy the claimed injury in full" and "lack standing to maintain this suit." *Id.*

### B. TST Lacks Standing.

TST asserts that it has standing both on behalf of its membership and in its own right. Both arguments fail.

9

TST cannot assert standing on behalf of its membership. "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996). Other than describing TST's member's beliefs, virtually the only allegations regarding TST's membership are that it has members "who reside within 100 miles of a Texas abortion facility" and "who are financially disadvantaged (i.e., they are disproportionately impacted by the financial cost of the required sonogram)." Compl. ¶ 3. TST has not alleged sufficient facts about its membership to materially distinguish any of them from Doe for the purpose of the Court's standing inquiry. Accordingly, for the same reasons that Doe lacks standing, TST's members also lack standing.

Likewise, TST has provided nothing other than conclusory allegations that the interests it seeks to protect are germane to its purpose or that its individual members' participation would not be required. *See id.* ¶¶ 15-17. Without additional factual allegations to substantiate these elements—and particularly without a more developed assurance that member testimony is not necessary to the litigation despite Plaintiffs' concession that TST members will provide evidence, *see id.* ¶ 17—TST's assertion of associational standing fails.

Plaintiffs have also failed to allege or demonstrate that TST itself has standing. TST asserts that "the complained-of regulations are anathema to TST's Satanic Abortion Ritual

and TST's Seven Tenets" and constitute "tyranny." *Id.* ¶¶ 13, 31. But TST does not put forth any articulable theory of injury to a constitutional right other than a "generalized grievance" that is not actionable in federal court—TST's purported injury is no different than any other citizen who disagrees with the policies reflected in the challenged statutes. *Cf. Lujan*, 504 U.S. at 573; *Valley Forge*, 454 U.S. at 485-86. Accordingly, TST lacks standing, and its claims must be dismissed.

### C. Defendants Are Immune.

HHSC is immune because "[s]tate agencies are entitled to Eleventh amendment sovereign immunity." *City of Austin v. Paxton*, 943 F.3d 993, 1003 (5th Cir. 2019). HHSC is a state agency. *See, e.g.*, Tex. Gov't Code § 531.021(a); *Simmons v. Smith*, 774 F. App'x 228, 229 (5th Cir. 2019) (mem.). The exception to immunity provided by *Ex parte Young* extends only to claims against "individual state officials in their official capacities." *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013). Accordingly, HHSC must be dismissed as a defendant.

Young also is immune. For essentially the same reasons that Plaintiffs lack standing, Young does not fall within the *Ex parte Young* exception. *See City of Austin*, 943 F.3d at 1002 ("Article III standing analysis and *Ex parte Young* analysis 'significantly overlap.'"). Plaintiffs have not alleged a sufficient connection between Young and the enforcement of the challenged statutes. *See id.* at 999-1000; *see also Okpalobi v. Foster*, 244 F.3d 405, 416 (5th Cir. 2001) (noting that the *Ex parte Young* principle requires an official to have "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty"). Accordingly, Young also must be dismissed as a defendant.

Finally, even if Plaintiffs had standing, and even if Defendants were not generally immune from all Plaintiffs' claims, the Court still lacks jurisdiction over Count 4. Count 4 is a state law cause of action under the Texas Religious Freedom Restoration Act ("TRFRA") for which there is no waiver of sovereign immunity. Tex. Civ. Prac. & Rem. Code § 110.008. Accordingly, Defendants retain immunity from this claim regardless of the outcome of the Court's *Ex parte Young* analysis. Moreover, in addition to sovereign immunity, the Court would be justified in declining to exercise supplemental jurisdiction over this state law claim because all other claims should be dismissed, as discussed herein. *See* 28 U.S.C. § 1367(c). Accordingly, the Court lacks jurisdiction over Count 4.

## II.     Plaintiffs Have Failed to State a Claim.

### A.  Count 1: Hybrid Free Speech/Free Exercise Claim

Plaintiffs erroneously claim that the challenged statutes "place[] barriers between" Satanists such as Doe and "religious speech and conduct" and are, therefore, unconstitutional. Compl. ¶ 95. As described above, Plaintiffs have not alleged any actual conflict between the Satanic Abortion Ritual and the challenged statutes. The Satanic Abortion Ritual occurs immediately prior to a surgical or medical abortion. Compl. ¶¶ 57-58. But the challenged statutes set out requirements that must be satisfied 2 to 24 hours before the abortion—in other words, by the time Doe was preparing to carry out the Satanic Abortion Ritual, the requirements of Chapter 171 would have already been met and would not, therefore, serve as a barrier to her free speech and free exercise during the ritual. No further analysis is needed. Plaintiffs have failed to allege a set of facts that could give rise to any constitutional claim.

12

Even if that were not the case, only rational basis review applies, and the challenged statutes readily survive that standard. The constitutionality of the challenged statutes under the free speech provision of the First Amendment has already been confirmed by the Fifth Circuit as applied to medical providers. *See Lakey*, 667 F.3d 570. *Lakey* held that laws requiring "the giving of truthful, non-misleading information which is relevant to the decision" to abort a pregnancy "did not impose an undue burden on the woman's right to an abortion" or violate the First Amendment. *Id.* at 575 (quoting *Casey*, 505 U.S. at 882) (internal quotations omitted). The Fifth Circuit also held that, pursuant to *Casey*, informed consent laws serve "the legitimate purpose of reducing the risk that a woman may elect an abortion, only to discover later, with devastating psychological consequences, that her decision was not fully informed" and the "legitimate goal of protecting the life of the unborn." *Id.* (quoting *Casey*, 505 U.S. at 882). On the other hand, Plaintiffs' speech is not restricted or impinged at all by the challenged statutes: neither Doe nor any TST member is required to speak or restrained from speaking by the challenged statutes. And Plaintiffs do not and could not allege a constitutional right not to hear offensive words. *Cf. Valley Forge*, 454 U.S. at 485-86.

Absent any concerns related to the free-speech right, Plaintiffs' claim amounts to nothing more than a free-exercise challenge, and there is no basis for imposing a heightened level of scrutiny on a "hybrid rights" theory because "[t]he present case does not present such a hybrid situation, but a free exercise claim unconnected with any communicative activity." *Employment Division v. Smith*, 494 U.S. 872, 882 (1990); *see also, e.g.*, *Chalifoux v. New Caney Indep. Sch. Dist.*, 976 F. Supp. 659, 671 (S.D. Tex. 1997)

13

(applying a heightened level of scrutiny in a hybrid case).

The constitutional standard for evaluating a Free Exercise claim is presently set forth by *Employment Division v. Smith*, which holds that "the right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" 494 U.S. at 879 (quoting *United States v. Lee*, 455 U.S. 252, 263 n.3 (1982) (Stevens, J., concurring)). In other words, under *Smith*, "to say that a nondiscriminatory religious-practice exemption is permitted, or even that it is desirable, is not to say that it is constitutionally required[.]" *Id.* at 890. Because the challenged statutes apply generally and neutrally to all abortion-seekers, and laws like the challenged statutes have been found to be constitutional as applied to virtually all women, *cf., e.g.*, *Casey*, 505 U.S. at 882; *Lakey*, 667 F.3d 570, Plaintiffs are not entitled to a religious exemption that is tailored to their particular system of beliefs, even if such beliefs are entitled to First Amendment protection.[2] Accordingly, Count 1 should be dismissed.

### B. Count 2: Equal Protection

Plaintiffs challenge section 171.0122(d)'s requirement that only certain pregnant women—those who are (1) pregnant as a result of rape, incest, or another crime; (2) minors under the judicial-bypass procedure; or (3) are carrying a fetus with "an irreversible medical condition or abnormality"—may choose "not to receive the verbal explanation of

---

[2] Defendants do not concede the applicability of Free Exercise protections to Plaintiffs' "nontheistic" system of beliefs, and expressly reserve the right to make such argument at any time.

the results of the sonogram images." Tex. Health & Safety Code § 171.0122(d); *see* Compl.

¶¶ 103-06. Plaintiffs allege that this requirement therefore "delineates between two classes

of pregnant women who don't want to listen to the narrative of the result." Compl. ¶ 104.

The first class is comprised of the categories of pregnant women listed in section

171.0122(d). Compl. ¶ 105. The second class, as alleged by Plaintiffs, includes "[a]ll other

pregnant women, importantly to include those who intend to participate in TST's Satanic

Abortion Ritual." *Id.* ¶ 106. Plaintiffs therefore conclude that section 171.0122(d) "must

survive strict scrutiny" because "[i]t impacts the fundamental right of free exercise of

religion." *Id.* ¶ 110. Alternatively, Plaintiffs contend that "it must survive intermediate

scrutiny because it impacts the Fourteenth Amendment's right to choose." *Id.* ¶ 111.

"The purpose of the Equal Protection Clause is to secure every person within the

state's jurisdiction against *intentional* and *arbitrary* discrimination." *Sonnier v.

Quarterman*, 476 F.3d 349, 368 (5th Cir. 2007) (citing *Village of Willowbrook v. Olech*,

528 U.S. 562 (2000)). "The general rule is that legislation is presumed to be valid and will

be sustained if the classification drawn by the statute is rationally related to a legitimate

state interest." *City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

"'Even if a neutral law has a disproportionately adverse impact . . . , it is unconstitutional

under the Equal Protection Clause only if that impact can be traced to a discriminatory

purpose.'" *Sonnier*, 476 F.3d at 368 (quoting *United States v. Galloway*, 951 F.2d 64, 66

(5th Cir. 1992)) (alteration in original).

Because Plaintiffs have defined the discriminated-against class as a residual

category of all other pregnant women, including ones with no religious disagreement with

the challenged statutes, Compl. ¶ 106, there is no suspect classification that would justify the imposition of strict scrutiny. *Cf. City of Cleburne*, 473 U.S. at 440. Even if Count 2 could be read to speak to a narrower category of women—perhaps ***only*** women "who intend to participate in TST's Satanic Abortion Ritual," rather than a class that "include[s]" them—section 171.0122(d) is still constitutional. As described above, the challenged statutes do not actually conflict with the Satanic Abortion Ritual. Accordingly, TST members do not belong to a separate class at all. Moreover, section 171.0122 was enacted by the Texas legislature in 2011, *see* Acts 2011, 82d Leg., ch. 73 (H.B. 15), § 3 (effective Sept. 1, 2011), whereas TST has been in existence only since 2013. *See* "Church of Satan vs. Satanic Temple," The Satanic Temple, https://thesatanictemple.com/pages/church-of-satan-vs-satanic-temple (last visited May 28, 2021). Accordingly, there could not have been discriminatory intent against Plaintiffs when enacting section 171.0122.

The Supreme Court has recognized that "[a]bortion is inherently different from other medical procedures, because no other procedure involves the purposeful termi- nation of a potential life." *Harris v. McRae*, 448 U.S. 297, 325 (1980). And when challenged under the Equal Protection Clause, the Supreme Court has applied only the rational-basis test to abortion regulations. *Id.* at 326; *Maher v. Roe*, 432 U.S. 464, 478 (1977); *see also Women's Med. Ctr. of Nw. Hous. v. Bell*, 248 F.3d 411, 419 (5th Cir. 2001); *Bryant*, 222 F.3d at 173.

Likewise, the challenged statutes should be analyzed under rational basis review, and they meet that standard. As stated, the challenged statutes further the State's important interests in ensuring informed consent, providing medically accurate information and

necessary care, and protecting the life of the unborn, among others. *See, e.g.*, *Casey*, 505 U.S. at 885; *Danforth*, 428 U.S. at 67; *Lakey*, 667 F.3d at 579. The exceptions contained in section 171.0122(d) further these purposes while preserving the well-being of sexual-assault victims, minors, and pregnant women grappling with irreversible fetal abnormalities. In light of these interests, Plaintiffs have not met their burden of alleging facts to overcome the challenged statutes' presumption of constitutionality. Accordingly, Plaintiffs have failed to state an Equal Protection claim.

### C.  Count 3: Violation of *Casey*

Plaintiffs allege in Count 3 that the cost of an unwanted sonogram is an undue burden that violates *Casey*. Compl. ¶¶ 114-18. Plaintiffs' undue-burden claim rests not on robust factual allegations, but rather the fact that the Fifth Circuit in *Lakey* did not specifically address the financial costs of a sonogram. *Id.* ¶ 116.

Plaintiffs' undue-burden claim is meritless. Indeed, *Casey* itself held that "[t]he fact that a law which serves a valid purpose, one not designed to strike at the right itself, has the incidental effect of making it more difficult or more expensive to procure an abortion **cannot** be enough to invalidate it." 505 U.S. at 874 (emphasis added). "Only when the increased cost of abortion is prohibitive, essentially depriving women of the choice to have an abortion, has the [Supreme] Court invalidated regulations because they impose financial burdens." *Greenville Women's Clinic v. Bryant*, 222 F.3d 157, 167 (4th Cir. 2000).

Here Plaintiffs allege only that the sonogram requirement "incurs an additional financial cost to the abortion." Compl. ¶ 117. Plaintiffs do not allege that the sonogram is cost prohibitive for **any** woman, nor does the Complaint reflect any facts that could

otherwise support a finding of an undue burden. Indeed, Plaintiff Doe, who alleges that she "has limited financial resources," was able to travel more than 100 miles to an abortion facility to obtain an abortion. Compl. ¶¶ 64, 75-76, 86-88. Accordingly, Plaintiffs have not alleged facts that support an inference that the incidental cost of a sonogram constitutes an undue burden, and Plaintiffs' "unwarranted factual inferences" and bare legal conclusions need not be credited by the Court. *Gentilello*, 627 F.3d at 544. Count 3 should be dismissed.

### D.  Count 4: Violation of TRFRA

Because Plaintiffs are absolutely barred from suing Defendants under TRFRA, Tex. Civ. Prac. & Rem. Code § 110.008, the Court need not reach the merits of Count 4. However, Defendants contend that Plaintiffs have not stated a viable claim and reserve all rights to urge that argument at any time.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion to dismiss.


Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief, General Litigation Division

*/s/ Christopher D. Hilton*
CHRISTOPHER D. HILTON
Lead Counsel
Texas Bar No. 24087727
Southern District No. 3029796
BENJAMIN S. WALTON
Texas Bar No. 24075241
Southern District No. 2338094
Assistant Attorneys General
General Litigation Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
Tel: (512) 463-2120
Fax: (512) 320-0667
christopher.hilton@oag.texas.gov
benjamin.walton@oag.texas.gov

***Counsel for Defendants***

19

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify, in accordance with Court Procedure 17(a) and 17(b), that on April 30, 2021, I conferred with counsel for Plaintiffs about the relief Defendants seek in this motion to dismiss. Following that conference, Plaintiffs sought leave to file a Second Amended Complaint, which substituted HHSC and its Executive Commissioner as Defendants, deleted two Counts, and made some amendments to Plaintiffs' factual allegations. Plaintiffs are opposed to the remaining relief that Defendants seek in this motion to dismiss.

*/s/ Christopher D. Hilton*
CHRISTOPHER D. HILTON

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, in accordance with Court Procedure 18(c), that the foregoing brief complies with the Court's word limit of 5,000. According to the word count function within Microsoft Word, this motion contains 4,904 words, exclusive of the case caption, table of contents, table of authorities, signature block, and certificates.

*/s/ Christopher D. Hilton*
CHRISTOPHER D. HILTON

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 28, 2021, the foregoing document was served via the Court's CM/ECF system to all counsel of record.

*/s/ Christopher D. Hilton*
CHRISTOPHER D. HILTON