THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| THE SATANIC TEMPLE, INC. and ANN DOE<br><br>PLAINTIFFS,<br><br>v.<br><br>TEXAS HEALTH AND HUMAN SERVICES COMMISSION, and<br><br>CECILE YOUNG, in her official capacity as Executive Commissioner of the HEALTH AND HUMAN SERVICES COMMISSION ("HHSC")<br>DEFENDANTS. | CASE NO. 4:21-CV-00387<br><br><br>JUDGE CHARLES ESKRIDGE |

## PLAINTIFFS' RESPONSE TO MOTION TO DISMISS

**COMES NOW** Plaintiff The Satanic Temple ("**TST**"), by and through counsel Matthew A. Kezhaya (AR # 2014161, appearing *pro hac vice*) of Kezhaya Law PLC, and Brad Ryynanen (TX # 24082520), of the Ryynanen Law Office PLLC with this, Plaintiffs' Response to Defendants' Motion to Dismiss.

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

Introduction .................................................................................................................................... 1

Argument ........................................................................................................................................ 2

    Legal Standard ...................................................................................................................... 2

    1: The Court has subject matter jurisdiction over the federal questions. ............................... 3

        Doe alleged an injury. ...................................................................................................... 3

        Doe's injury is fairly traced to HHSC and Young's enforcement of the challenged regulations .. 5

        The relief sought in the Second Amended Complaint would redress Doe and TST's injuries. ... 6

        TST has associational standing to sue on behalf of members. ........................................ 7

        Defendants are not immune from suit. ............................................................................. 7

    2: Plaintiffs have pleaded a Free Speech / Free Exercise claim. ............................................ 8

    3: Plaintiffs stipulate to dismissing the Equal Protection claim. ......................................... 13

    4: Plaintiffs have pleaded a *Casey* violation. ....................................................................... 13

    5: Plaintiffs stipulate that this Court lacks subject matter jurisdiction over the TRFRA claim. ....... 14

    6: Plaintiffs Alternatively Request Leave to Amend ........................................................... 14

Prayer for Relief .......................................................................................................................... 15

# TABLE OF AUTHORITIES

Cases

Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682 (2014) .................................................. 11

Capitol Square Review and Advisory Bd. v. Pinette, 515 U.S. 753, 760 (1995) .................... 10

Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520 (1993) .................. 13

Emp. Div., Dep't of Hum. Res. of Oregon v. Smith, 494 U.S. 872 (1990)) ................. 11, 12, 13, 14

Ex Parte Young, 209 U.S. 123 (1908) .................................................................................. 8

Frew ex. Rel. Frew v. Hawkins, 540 U.S. 431 (2004) ........................................................... 8

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167 (2000) ............ 8

Fulton v. City of Philadelphia, ___ U.S. ___ (June 17, 2021) ......................................... 2, 13, 14

Greenville Women's Clinic v. Bryant, 222 F.3d 157, 167 (4th Cir. 2000) ............................ 2, 16

Harris v. Quinn, 573 U.S. 616 (2014) ................................................................................. 11

Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333 (1977) ....................................... 7

L. Students C.R. Rsch. Council, Inc. v. Wadmond, 401 U.S. 154 (1971) .............................. 12

Leal v. Azar, No. 2:20-CV-185-Z, 2020 WL 7672177 (N.D. Tex. Dec. 23, 2020) ................ 16

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ........................................................... 4

Planned Parenthood of Se. Pennsylvania v. Casey, 505 U.S. 833, 874 (1992) ...................... 15

Roe v. Wade, 410 U.S. 113, 160–61 (1973) ........................................................................ 11

Sherbert v. Verner, 374 U.S. 398 (1963) ............................................................................. 14

Sorrell v. IMS Health Inc., 564 U.S. 552 ............................................................................. 10

Susan B. Anthony List v. Driehaus, 573 U.S. 149 (2014) .................................................... 5

Tandon v. Newsom, 593 U.S. ___ (April 9, 2021) ............................................................... 13

Texas Med. Providers Performing Abortion Servs. v. Lakey, 667 F.3d 570 (5th Cir. 2012) ..... 9, 11, 12

Trinity Lutheran Church of Columbia, Inc. v. Comer, 137 S. Ct. 2012 (2017) ..................................... 14

Webster v. Reproductive Health Services, 492 U.S. 490, 530 (1989) ..................................................... 16

Williams v. Lakeview Loan Servicing LLC, No. 4:20-CV-01900, 2020 WL 76322572 (S.D. Tex. Dec. 22, 2020) ............................................................................................................................................. 3

Wooley v. Maynard, 430 U.S. 705, 714, 97 S. Ct. 1428, 1435, 51 L. Ed. 2d 752 (1977) ......................... 10

## Statutes

Tex. Civ. Prac. & Rem. Code § 110.006(d)(1) ................................................................................. 6

Tex. Civ. Prac. & Rem. Code § 110.006(c) ...................................................................................... 6

Tex. Health & Safety Code §§ 171.011-.018 .................................................................................... 6

Tex. Health & Safety Code § 171.0122(d) ...................................................................................... 14

Texas Health and Safety Code § 171.018 ........................................................................................ 6

## Rules

Fed. R. Civ. P. 15(a)(1)(A) .............................................................................................................. 15

Fed. R. Civ. P. 15(a)(2). ................................................................................................................... 15

## INTRODUCTION

This Court has jurisdiction because Plaintiffs have both suffered constitutional injuries. Defendants' Motion to Dismiss broadly asserts that an enforced waiting period, the cost of a medically unnecessary sonogram, and other regulations do not disrupt the Satanic Abortion Ritual. Defendants' same argument would also require a finding of constitutionality if Texas required a Catholic priest, before performing mass, to obtain unnecessary medical treatment at his expense, listen to statements about mass, and then wait between 2 and 24 hours. The fact that a state actor does not literally interrupt the ceremony *while* it occurs does not change the constitutional violation of imposing regulations as a precondition to engaging in a religious ceremony. The same is true here; the fact that Defendants did not *directly* interrupt the Satanic Abortion Ritual does not remove the constitutional harm in placing a condition precedent before the ritual can take place.

Ann Doe has direct standing because the State implements abortion regulations which offer exemptions for some abortions but fail to accommodate her religious practices. As a result, her religious practice was made contingent upon adhering to the regulations. Particularly, the State made her religious practice contingent upon undergoing a sonogram to which she has a religious objection and costs money, forced listening to the results, and undergoing a mandatory waiting period, all of which violate the Third and Fifth Tenets.

Likewise, TST has associational standing to sue on behalf of its membership who are affected by the regulations at issue, particularly those members who live within 100 miles of an abortion facility (and therefore must undergo a longer waiting period) and those who are financially disadvantaged (and therefore are disproportionately impacted by the financial cost of the required sonogram).

On the merits, Plaintiffs have a valid Free Speech / Free Exercise claim. The State claims that the regulations do not involve the Free Speech Clause. Plaintiffs respectfully disagree. The Free Speech Clause is implicated because the ritual involves religiously charged speech. By regulating *when* that

speech can take place, the State has regulated the speech at issue.

Defendants also claim that the regulations do not involve the Free Exercise Clause. Shortly after Defendants' brief was filed, the Supreme Court abrogated Defendants' cited case. See Fulton v. City of Philadelphia, ___ U.S. ___ (June 17, 2021). There, the Supreme Court clarified that a regulatory scheme is not "generally applicable" if it provides some exemptions but not religious exemptions. Because Texas's regulatory scheme affords exemptions to the sonogram and waiting period for *some* abortions, Texas must justify the lack of exemptions for religious abortions by surviving strict scrutiny.

As for Casey, the regulations at issue impose an undue burden on Doe's and TST members' right to an abortion. First, Plaintiffs Second Amended Complaint (Doc. 26) alleges that the sonogram imposes an undue financial burden upon Doe and TST's financially disadvantaged membership. Second, under Greenville Women's Clinic v. Bryant, 222 F.3d 157, 167 (4th Cir. 2000), an opinion relied on in Defendants' Motion to Dismiss, it is a fact question whether such financial burden is "undue."

To some extent, Plaintiffs do not object to Defendants' Motion to Dismiss. The Equal Protection argument is synonymous with the Free Exercise argument. In light of Fulton, Plaintiffs are comfortable relying exclusively on the Free Exercise argument. Because the arguments are the same, the Equal Protection claim can be dismissed as duplicative of the Free Speech / Free Exercise claim. As for the TRFRA claim, Plaintiffs concede that this Court lacks subject matter jurisdiction over this claim, a result that could have been obtained had Defendants raised this argument during the meet and confer process. The Court should dismiss the TRFRA and Equal Protection claims without prejudice and should otherwise deny the Motion to Dismiss.

## ARGUMENT

### Legal Standard

The legal standard for a motion to dismiss is well known and was recently stated in Williams v.

Lakeview Loan Servicing LLC, No. 4:20-CV-01900, 2020 WL 7632257, at *1–2 (S.D. Tex. Dec. 22, 2020). There, this Court explained:

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. To survive a Rule 12(b)(6) motion to dismiss, the complaint must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level.

Id. (cleaned up). For the reasons stated below, the complaint adequately pleads a Free Speech / Free Exercise claim and a Casey violation. Plaintiffs stipulate to dismissal without prejudice of the Equal Protection and TRFRA claims.

## 1: The Court has subject matter jurisdiction over the federal questions.

Defendant's Motion to Dismiss claims that Plaintiffs have not satisfied any element of standing. Doc. 28 at 6-11. As laid out below, Plaintiffs have sufficiently alleged all elements of standing.

To establish Article III standing, a plaintiff must satisfy three requirements: "First, the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (cleaned up).

### Doe alleged an injury.

Defendants claim that Doe has not suffered a legally cognizable injury because she failed to plead facts to support her assertion that her "religious objections were overrun and her participation in the Satanic Abortion Ritual was substantially interfered with." Doc. 28 at p. 7. In support of this argument, Defendants claim that the regulations "are completed well in advance of performing the

abortion the abortion and did not require Doe to alter her religious practice in any way." Doc. 28 at p. 8. However, these arguments miss the point. By way of analogy, imagine a regulation that required a Catholic priest to apply for a license 2 hours or 24 hours before performing last rites. In that context, would Defendants really dispute that the ritual of last rites was "altered" by the regulation? Even though the state was not actively interrupting ritual, the priest still had his "religious objections . . . overrun and [his] participation in the [last rites ritual] was substantially interfered with."

Indeed, Doe alleged as much. For example, she alleged that "the State's intrusion into [her] decision about [her] own body is a tyrant overpowering resistance to compel beliefs and actions." Doc. at ¶ 52. This overpowering of her will is "deeply offensive" to Doe who "subscribe[s] to the Third Tenet." Doc. 26 at ¶ 54. Doe resolved to abort the pregnancy and engage in the Satanic Abortion Ritual. Doc 26 at ¶¶ 62-63. Doe learned that she would be required to comply with several abortion regulations that act as an impediment--specifically the four challenged regulations. Doc. 26 at ¶¶ 67-68. Notably, Defendants never addressed the injury caused by the increased cost of an abortion imposed by the medically unnecessary sonogram. Doe suffered an injury-in-fact because the regulations require a sonogram that increases the cost of an abortion by $150. Doc. 26 at ¶¶ 75-76. Thus, the regulations forced her to undergo a medical treatment in order to perform the Satanic Abortion Ritual, thereby placing a barrier between Doe and her choice to engage in her religious practice. Doc. 26 at ¶¶ 77-78.

Doe attempted to remove the burden imposed on her religious expression under the regulations by seeking a religious exemption, but the facility performing her abortion refused to grant it. Doc. 26 at ¶¶ 79-80. Doe and TST do not fault the facility because the regulations, as written, do not provide for any religious exemptions. Doc. 26 at ¶¶ 81-82.

Defendants argued that her religious tenets, especially the Third and Fifth Tenet at issue in this case, were not undermined–in part–because she chose to undergo "an abortion procedure

voluntarily—it was her choice." Doc. 28 at p. 7. Put another way, Defendants argue that any person who chooses to go to church under a prayer licensing scheme are not harmed because they went to church voluntarily—it was their choice. The licensing scheme, like the regulations, fails constitutional scrutiny because it impedes the ability of a person to make the religious choice they wish to make.

In summary, the regulations imposed on Doe undermined her ability to undertake the Satanic Abortion Ritual. Therefore, a constitutional injury occurred, satisfying the first element of standing.

### Doe's injury is fairly traced to HHSC and Young's enforcement of the challenged regulations.

Defendants argue that Doe's injury is not traceable to Defendants because the Complaint does "not describe a single 'enforcement' action that either Defendant has ever taken." Doc. 28 at pp. 8-9. Defendants do not cite any authority for the proposition that a Plaintiff must identify a specific enforcement action that Defendants took. In fact, standing exists where a Plaintiff alleges an intention to do something in the future which arguably affects a constitutional interest and there is a credible threat of a future enforcement action. Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014). It is irrelevant whether Plaintiffs can plead a *past* instance where Defendants engaged in an enforcement action, what matters is that the facility *would* suffer repercussions if it gave Plaintiff her rightful exemption. Doc. 26 at ¶ 83.

Defendants next argue that Doe fails to explain how HHSC could have granted a religious exemption to the challenged regulations. Doc. 28 at p. 9. To the contrary, the Complaint details precisely how HHSC was empowered under Texas law to grant a religious exemption. Specifically, Plaintiffs allege that Doe issued a TRFRA demand letter to HHSC. Doc. 26 at ¶ 84; see also Ex. B (explaining the basis for an exemption and citing TRFRA in seeking such exemption). Plaintiffs further allege that HHSC did not grant a religious exemption. Doc. 26 at ¶ 85. Under TRFRA, a "government agency that receives a notice . . . may remedy the substantial burden on the person's free

exercise of religion." Tex. Civ. Prac. & Rem. Code § 110.006(c). Such remedy "may be designed to reasonably remove the substantial burden on the person's free exercise of religion." Id. at 110.006(d)(1). In other words, Doe alleged that she requested the religious exemption and specifically cited the statute providing Defendants with the ability to create a remedy in the form of a religious exemption to the challenged regulations. In other words, HHSC, and Young as its Executive Commissioner, had the power to create a remedy that could have removed the injury. They just chose not to use it.

### The relief sought in the Second Amended Complaint would redress Doe and TST's injuries.

Defendants next argue that the Court cannot redress Doe's injuries with an injunction against the named Defendants. Doc. 28 at p. 9. Defendants' only argument to support this claim is that even if the relief sought were granted, the physicians in Texas would still be subject to criminal prosecution under Texas Health and Safety Code § 171.018. Id.

Texas Health and Safety Code § 171.018 provides that a "physician who intentionally performs an abortion in violation of . . . subchapter [B] commits an offense." Id. All of the challenged regulations are included in chapter 171, subchapter B of the Texas Health and Safety Code. See, generally Tex. Health & Safety Code §§ 171.011-.018.

Plaintiffs Second Amended Complaint seeks: (1) a declaration that the regulations at issue are unconstitutional as applied to Doe and similarly situated TST members; (2) a permanent injunction against HHSC to bar enforcement of the regulations insofar as they substantially interfere with the Satanic Abortion Ritual; and (3) a permanent injunction against HHSC requiring the creation and enforcement of regulations that accommodate the Satanic Abortion Ritual. Doc. 26 at p. 18.

If the Court grants this relief, the regulations in subchapter B would no longer apply to abortions performed as part of a Satanic Abortion Ritual – and therefore, a physician that performed such an

abortion would not violate the subchapter. Therefore, the relief sought would fully redress the injuries alleged by Plaintiffs.

### TST has associational standing to sue on behalf of members.

TST has associational standing to sue on behalf of its membership who are affected by the regulations at issue, particularly those members who live within 100 miles of an abortion facility (and therefore must undergo a waiting period) and those who are financially disadvantaged (and therefore are disproportionately impacted by the financial cost of the required sonogram).

The test for associational standing is a three-part test: (1) its members would otherwise have standing to sue in their own right; (2) the interests at stake are germane to the organization's purpose; and (3) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit. Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977); Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181 (2000).

The first prong is satisfied by Doe, as explained above. It is equally satisfied by other, similarly situated members as alleged in the Second Amended Complaint. The second prong is met because TST's organizational purpose is to promote pluralism by demanding equal rights as majority religion, to lead by example, and lending aid to public affairs that might benefit from rational, Satanic insights. See https://thesatanictemple.com/pages/about-us (last accessed June 17, 2021); see also Doc. 26 at ¶¶ 9, 39, 43. The last prong is met because the individual members of TST are not required for the briefing or the trial. The membership have nothing to add that Doe and TST cannot provide. The material witnesses, those with knowledge of the pertinent facts, are likely all employees of HHSC.

### Defendants are not immune from suit.

Defendants argue that HHSC and Young are both immune from suit under the Eleventh Amendment. Doc. 28 at p. 11. "The Eleventh Amendment confirms the sovereign status of the States by shielding them from suits by individuals absent their consent." Frew ex. Rel. Frew v.

Hawkins, 540 U.S. 431, 437 (2004) (citing Seminole Tribe of Fla. V. Florida, 517 U.S. 44, 54 (1996)). However, "[t]o ensure the enforcement of federal law . . . the Eleventh Amendment permits suits for prospective injunctive relief against state offices acting in violation of federal law." Id. (emphasis added). Ex Parte Young requires the state official to have "some connection with the enforcement of the act." Ex Parte Young, 209 U.S. 123, 157 (1908).

Notably, Defendants claim that "Plaintiffs have not alleged a sufficient connection between Young and enforcement of the challenged statutes." Doc. 28 at p. 11. In fact, Plaintiffs alleged that HHSC is "the Texas agency responsible for enforcing the complained-of Texas abortion regulations" and that Young is the "Executive Commissioner of the Texas Health and Human Services Commission." Doc. 26 at p ¶¶ 11-12. Plaintiffs further alleged (as described in detail under § 1.b and c, above) that HHSC would have enforced the regulations against the facility had the facility granted a religious exemption, and that HHSC did not grant a religious exemption. Id. ¶¶ 79-85. To be fair, even Defendants were apparently confused about which agency shoulders responsibility for enforcing the challenged regulations, as Plaintiffs were initially informed by HHSC that it was not the proper agency. Only after a meet-and-confer did Defendants confirm that HHSC was the enforcing agency and the proper party substituted in the Second Amended Complaint. Finally, as addressed below, Plaintiffs agree that their TRFRA claim (Count 4) should be dismissed due to lack of subject matter jurisdiction. With the TRFRA claim's dismissal, that would also require dismissal of the HHSC.

## 2: Plaintiffs have pleaded a Free Speech / Free Exercise claim.

Defendants contest whether Plaintiffs have pleaded a viable Free Speech / Free Exercise claim. Doc. 28 at pp. 12-14. First, Defendants suggest without analysis that the regulations at issue do not implicate the Free Speech clause. Id. at pp. 12-13. Defendants' argument relies on creating a false analogy between medical providers and TST's membership. See Texas Med. Providers Performing Abortion Servs. v. Lakey, 667 F.3d 570 (5th Cir. 2012). This is unavailing. While the State may have

a legitimate basis to oftentimes require that physicians relay the probable age of the fetus, id. at 575, this says nothing about whether the State may lawfully impact an adherent's right to utter religiously charged speech.

The core concern of the First Amendment is freedom of thought. See Wooley v. Maynard, 430 U.S. 705, 714, 97 S. Ct. 1428, 1435, 51 L. Ed. 2d 752 (1977) ("the right to speak and the right to refrain from speaking are complementary components of the broader concept of "individual freedom of mind.") There, the Supreme Court struck down New Hampshire's requirement that private citizens display the state motto on their license plate because the state's interest to disseminate an ideology cannot outweigh an individual's First Amendment right to avoid becoming the courier for the message. Id. at 717.

This "freedom of thought" has two implications in this case. First, the State is regulating when TST's members are allowed to utter their religiously charged speech. By placing barriers between the member and the context in which they utter their speech, the State is abridging the member's right to engage in their chosen speech. The Free Speech Clause plainly prohibits this. E.g. Sorrell v. IMS Health Inc., 564 U.S. 552, 566, 131 S. Ct. 2653, 2664, 180 L. Ed. 2d 544 (2011) ("Lawmakers may no more silence unwanted speech by burdening its utterance than by censoring its content") and id. at 568 ("An individual's right to speak is implicated when information he or she possesses is subjected to 'restraints on the way in which the information might be used' or disseminated"). It is irrelevant that the speech at issue is religious because the Free Speech clause protects both religious speech and secular speech. Capitol Square Review and Advisory Bd. v. Pinette, 515 U.S. 753, 760 (1995) ("a free-speech clause without religion would be Hamlet without the prince.")

Second, governments may not force people to pay a subsidy for speech to which he or she objects. Harris v. Quinn, 573 U.S. 616, 647, 134 S. Ct. 2618, 2639, 189 L. Ed. 2d 620 (2014). Compulsory funding of objected-to speech–here, the sonogram narrative–is tantamount to compelling the speech

in the first place.  Id.  While the Lakey Court found a legitimate interest in the State requiring that *the physician* make this information available to the pregnant woman, this says nothing of the pregnant woman's right to be free from the requirement that she fund speech which she objects to in the first place.

Moreover, the Lakey Court had before it a far different issue than this case.  There, it was sufficient to satisfy a legitimate interest that the information was truthful and nonmisleading.  Lakey, 667 F.3d at 575.  But this case raises a Free Exercise issue.  The issue of abortion has always been recognized as a highly sensitive matter of individual conscience, see Roe v. Wade, 410 U.S. 113, 160–61, 93 S. Ct. 705, 730–31, 35 L. Ed. 2d 147 (1973), and it is well established that governments have no legitimate place to provide a binding answer to important questions of religion and moral philosophy.  See Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 724, 134 S. Ct. 2751, 2778, 189 L. Ed. 2d 675 (2014).  Plaintiffs, as a matter of their religious doctrine, believe that the sonogram narrative is designed to trump their religious beliefs and is therefore misleading.  It is no place for the State to "in effect tell the plaintiffs that their beliefs are flawed." Id. ("Repeatedly and in many different contexts, we have warned that courts must not presume to determine . . . the plausibility of a religious claim.") (quoting, Emp. Div., Dep't of Hum. Res. of Oregon v. Smith, 494 U.S. 872, 887, 110 S. Ct. 1595, 1604, 108 L. Ed. 2d 876 (1990)).

Lakey is also materially different because, there, the physicians could constitutionally be required to speak as part of the regulation on the practice of medicine.  Lakey, 667 F.3d at 575.  This is constitutionally equivalent to requiring would-be attorneys to utter an oath to the Constitution.  L. Students C.R. Rsch. Council, Inc. v. Wadmond, 401 U.S. 154, 91 S. Ct. 720, 27 L. Ed. 2d 749 (1971).  But the State has no legitimate interest in compelling TST's membership to subsidize the State's intended message any more than the State has a legitimate interest in requiring TST's membership to host the State's motto on their license plates.

In summary, the Free Speech issue is two-fold. First, before TST's membership are allowed to utter their religiously charged speech, they must jump through regulatory hoops–hoops that cost money. This is a restriction, or "abridgment," of their right to engage in this speech. Second, TST's membership must subsidize speech to which they object.

As for the Free Exercise portion of the hybrid claim, Defendants rely on abrogated law. See Doc. 28 at p. 19. As Defendants rightly point out, the Free Exercise claim was, on May 28, set forth by Employment Division v. Smith, 494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990). Id. (referencing Smith, 494 U.S. at 879). There, the Supreme Court upheld the controlled substances ban against consuming peyote (a hallucinogen), even though the plaintiffs engaged in religious uses of the drug. The justification was that, because the statute barred secular use of the drug, it was not a Free Exercise violation to also bar its religious use.

At the time Defendants filed their motion, a statute that facially applied to both the religious and the secular was not a Free Exercise problem absent either (1) proof of discriminatory intent; or (2) the statute implicated some other fundamental right. Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 545, 113 S. Ct. 2217, 2233, 124 L. Ed. 2d 472 (1993) (discriminatory intent upends "general applicability"); Smith, 494 U.S. at 882, 110 S. Ct. at 1602 (hybrid rights situations, like this case, does not fall under the "general applicability" rubric)

The problem is that, since Defendants' motion, the Supreme Court clarified the constitutional landscape. See Fulton v. City of Philadelphia, ___ U.S. ___ (June 17, 2021). There, the Supreme Court confirmed Plaintiffs' theory that "general applicability" *also* does not apply if the regulations provide some exceptions but fail to accommodate religious objections. Compare the Second Amended Complaint (Doc. 26) at pp. 14-15 (Count 2) with Fulton at *10 ("The creation of a formal mechanism for granting exceptions renders a policy not generally applicable, regardless whether any exceptions have been given, because it 'invite[s]' the government to decide which reasons for not

complying with the policy are worthy of solicitude'") (quoting Smith, 494 U.S. at 884).

By creating exemptions for some secular concerns, but not for religious concerns, the City of Philadelphia was fundamentally discriminating against religion. That violated the Free Exercise Clause. Id.; see also Tandon v. Newsom, 593 U.S. ___ (April 9, 2021). The same is true here. The regulations at issue provides secular exceptions, but not religious exemptions, to the requirement that the pregnant woman listen to verbal explanation of the sonogram results. See Tex. Health & Safety Code Ann. § 171.0122(d). For the regulations to survive constitutional scrutiny, the State must explain why these regulations do not include religious exemptions to hearing the sonogram results. The appropriate threshold is strict scrutiny. Fulton at *13. That is to say, "only if it advances interests of the highest order and is narrowly tailored to achieve those interests," or "so long as the government can achieve its interests in a manner that does not burden religion, it must do so." Id. (cleaned up).

The State may contest that these regulations are not *intentionally* discriminatory. This is unavailing because the Free Exercise clause prohibits even an indirect penalty on the free exercise of religion. Trinity Lutheran Church of Columbia, Inc. v. Comer, 137 S. Ct. 2012, 2022, 198 L. Ed. 2d 551 (2017). It is a per se Free Exercise violation that these regulations place conditions upon the exercise of religion. Id. ("[i]t is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege") (quoting Sherbert v. Verner, 374 U.S. 398, 404, 83 S. Ct. 1790, 1794, 10 L. Ed. 2d 965 (1963)).

It is tantamount to regulating the religious speech, itself, that the State regulates the context in which TST's membership engages in its religious speech. Absent secular exemptions to these regulations, the State could find some shelter in the rapidly shrinking "general applicability" doctrine set forth in Employment Division v. Smith. But, as the Fulton Court just unanimously affirmed, there is no general applicability if there are secular exemptions but not religious exemptions. That is discrimination against religion, and it violates the Free Exercise clause.

Alternatively, because this issue also involves regulating speech and requiring TST's membership to subsidize speech that they object to, this matter involves Free Speech concerns. Thus, the Court could and should find that this is a hybrid situation which did not fall under the "general applicability" rubric even before Fulton. In either event, the State bears the burden of showing that these regulations satisfy strict scrutiny and, therefore, dismissal of Count 1 is inappropriate.

### 3: Plaintiffs stipulate to dismissing the Equal Protection claim.

To simplify this case, Plaintiffs stipulate to dismissal of the Equal Protection claim. Fundamentally, the Equal Protection argument is identical to the Free Exercise argument, so the Equal Protection argument involves unnecessary duplication of effort for the parties and for this Court.

### 4: Plaintiffs have pleaded a *Casey* violation.

Next, Defendants contest the adequacy of Count 3, the Casey violation. Defendants' argument against Count 3 rests solely on the faulty premise that the regulations at issue serve a valid purpose. See Doc. 28 at p. 17 ("[t]he fact that a law which serves a valid purpose, one not designed to strike at the right itself, has the incidental effect of making it more difficult or more expensive to procure an abortion cannot be enough to invalidate it.") (quoting Planned Parenthood of Se. Pennsylvania v. Casey, 505 U.S. 833, 874, 112 S. Ct. 2791, 2819, 120 L. Ed. 2d 674 (1992). For the reasons stated under § 2, the regulations at issue do *not* serve a valid purpose. By adding a financial burden to an already-invalid regulation, Casey offers Defendants no support.

Moreover, Defendants' brief omits the next, critical, sentence from Casey: "Only where state regulation imposes an undue burden on a woman's ability to make this decision does the power of the State reach into the heart of the liberty protected by the Due Process Clause." Casey, 505 U.S. at 874.

The complaint alleges that the cost of the sonogram *does* imposes an undue financial burden upon TST's financially disadvantaged membership, importantly to include Doe. Doc. 26 at ¶ 116. And even Defendants' authority holds that it is a question of fact whether the financial burden is "undue."

See Greenville Women's Clinic v. Bryant, 222 F.3d 157, 167 (4th Cir. 2000) ("regulation requiring medical tests is constitutional where 'the cost of examinations and tests that could usefully and prudently be performed ... would only *marginally, if at all*, increase the cost of an abortion'") (emphasis added) (quoting Webster v. Reproductive Health Services, 492 U.S. 490, 530, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989) (O'Connor, J., concurring). Because resolution of Count 3 boils down to a fact dispute, it is inappropriate to dismiss at the pleading stage.

## 5: Plaintiffs stipulate that this Court lacks subject matter jurisdiction over the TRFRA claim.

Defendants argue that Plaintiffs are "absolutely" barred from suing Defendants under TRFRA. Doc. 28 at p. 23. Plaintiffs take issue with the claim that they are "absolutely" barred, but concede that this Court lacks jurisdiction over the TRFRA claim. See Leal v. Azar, No. 2:20-CV-185-Z, 2020 WL 7672177, at *17–21 (N.D. Tex. Dec. 23, 2020), judgment entered sub nom. Leal v. Becerra, No. 2:20-CV-185-Z, 2021 WL 1163663 (N.D. Tex. Mar. 26, 2021).

There, Judge Kacsmaryk recently issued a compelling opinion that Texas waived its sovereign immunity for the TRFRA claim, but only as to its State courts. Thus, a Texas State court has jurisdiction over the TRFRA claim but a Federal court–this Court–does not. The Court should dismiss the TRFRA claim without prejudice for lack of subject matter jurisdiction.

## 6: Plaintiffs Alternatively Request Leave to Amend

Plaintiffs filed their Original Complaint in the early morning hours of February 5, 2021. See Doc. 1. The Original Complaint named Dr. Hellerstedt, and Texas Department of State Health Services due to a representation by HHSC that it was not the proper party on which to serve a TRFRA demand. Defendants' Motion to Dismiss claims that Doe "sought an ex parte temporary restraining order from the Court." Doc. 28 at p. 4. Plaintiffs' counsel contacted the clerk's office several times asking for the case to be assigned to schedule an appropriate hearing with all parties present – i.e., not an *ex parte*

hearing. Contact with the abortion facility resulted in conversations with its counsel regarding scheduling a hearing. Contact with the State went unanswered.

Plaintiffs filed their First Amended Complaint on February 12, 2021 as a matter of right. Fed. R. Civ. P. 15(a)(1)(A). Plaintiffs dropped the facility from the pleadings as their presence was unnecessary after the emergency relief was rendered moot. Following a meet-and-confer and confirmation that HHSC was the appropriate agency, Defendants agreed to filing of a Second Amended Complaint. See Doc. 24. The Second Amended Complaint, naming the correct parties was filed on May 7, 2021. Doc. 26.

Without conceding that Plaintiffs' Second Amended Complaint fails to plead sufficient facts, Plaintiffs respectfully request leave to file a Third Amended Complaint to correct any deficiencies of pleading that the Court may find in its independent assessment. FRCP 15(a)(2).

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs pray the Court deny the Motion to Dismiss as to the Free Speech / Free Exercise Counts (Counts 1 and 3), and dismiss without prejudice the Equal Protection and TRFRA Counts (Counts 2 and 4). In the alternative, Plaintiffs seek leave to file a Third Amended Complaint as to the Free Speech and Free Exercise Counts.

Respectfully submitted,    Date: June 18, 2021

By:    /s/ Matthew A. Kezhaya
Attorney-in-charge (*pro hac vice* pending)
Matthew A. Kezhaya, ABA # 2014161
Kezhaya Law PLC
1202 NE McClain Road
Bentonville, AR 72712
P: 479-431-6112
Email: matt@kezhaya.law

   /s/ Brad Ryynanen
Brad Ryynanen
Texas Bar No. 24082520
The Ryynanen Law Office, PLLC
515 Centre Street, # 4471
Dallas, TX 75208
P: 214-972-8640
Email: brad@bdrlegal.com