# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| THE SATANIC TEMPLE, INC. and ANN DOE, § § § *Plaintiffs,* § § v. § § TEXAS HEALTH AND HUMAN § SERVICES COMMISSION and CECILE § YOUNG, in her official capacity as § Executive Commissioner of the § HEALTH AND HUMAN SERVICES § COMMISSION, § § *Defendants.* § | Civil Action No. 4:21-cv-00387 |

### DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
### PURSUANT TO RULES 12(B)(1) AND 12(B)(6)

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief, General Litigation Division

CHRISTOPHER D. HILTON
Deputy Chief, General Litigation Division

BENJAMIN S. WALTON
Assistant Attorney General
General Litigation Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548

***Counsel for Defendants***

Plaintiffs have abandoned their Equal Protection and TRFRA claims, Resp. at 13-14 [ECF No. 30], and Plaintiffs agree that Defendant HHSC should be dismissed, Resp. at 8. For the reasons stated below and in Defendants' Motion to Dismiss,[1] the Court lacks jurisdiction over the remaining claims, and such claims fail on their merits.

## I. The Court Lacks Jurisdiction.

### A. Plaintiffs Did Not Suffer a First Amendment Injury-in-Fact.

Plaintiffs contend that because they do not agree with the pre-abortion requirements imposed by law, their speech and religious observance are constrained. Resp. at 3-7. They analogize their performance of the Satanic Abortion Ritual to a Catholic priest being required to "apply for a license 2 hours or 24 hours before performing last rites" or "obtain unnecessary medical treatment at his expense, listen to statements about mass, and then wait between 2 and 24 hours" before providing mass. Resp. at 1, 4. But Plaintiffs' analogies are wholly inapposite, and they suffer no injury to their religious speech or practice.

The Satanic Abortion Ritual begins "immediately" before the abortion itself begins and ends shortly thereafter. *See* MTD at 3-4. As alleged, nothing about Plaintiffs' ritual is interfered with or altered by the challenged statutes—unlike the comparisons drawn by Plaintiffs, which involve the direct regulation of religious observances. Moreover, a Catholic priest does not suffer a First Amendment injury because he must obey traffic laws on his way to mass if he is running late, ensure that his church complies with building

---

[1] Defendants respond in this Reply only to the most salient points raised in Plaintiffs' Opposition, but Defendants stand on and do not waive any of their arguments in their Motion to Dismiss ("MTD") [ECF No. 28].

codes, or display required signage indicating emergency exits or disabled parking, regardless of the nature of his objections to those requirements. Abortions are medical procedures subject to minimum standards and requirements regulated by the State, and Plaintiffs' religious practices and beliefs are not encumbered in any way by the challenged statutes. Because Plaintiffs' religious speech, observances, and beliefs are wholly intact, they have not alleged a Free Speech or Free Exercise injury-in-fact.

Plaintiffs assert a new, unalleged theory of injury in their Response: they contend they are compelled to "subsidize" speech with which they do not agree. Resp. at 9-13. But the challenged laws require no such thing. All abortion-seekers must undergo a sonogram, which is a "routine measure[] in pregnancy medicine today" and is "viewed as 'medically necessary' for the mother and fetus." *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 579 (5th Cir. 2012). This requirement is constitutional, and the incidental cost of the sonogram does not alter that conclusion, as discussed below. But more fundamentally, the First Amendment does not require that a sonogram be performed in complete silence. Requiring Plaintiffs to obtain necessary medical care attendant to an elective procedure that includes words uttered privately by the physician to the patient is far different from the compulsory union fees at issue in cases like *Harris v. Quinn*, 573 U.S. 616 (2014*). Cf.* Resp. at 9-10.[2] The words spoken by the physician reflect accurate medical information, not an intrusion into Plaintiffs' freedom of thought. Accordingly, Plaintiffs have failed to allege any injury-in-fact to any of their First Amendment rights.

---

[2] *Wooley v. Maynard*, 430 U.S. 705 (1977), also cited by Plaintiffs for this theory of injury, did not involve any claims of subsidized speech and is inapposite.

2

### B. TST Lacks Standing.

TST clarifies in its Opposition that it does not assert standing in its own right, but rather only seeks to assert associational standing on behalf of its members. Resp. at 7. It cannot do so. As discussed above, none of TST's members are alleged to have suffered a First Amendment injury-in-fact. With respect to TST's substantive due process claim under *Casey*, no member of TST—not even Doe—is alleged to have been prevented from obtaining an abortion as a result of the challenged statutes. Moreover, TST does not allege that obtaining and promoting abortions is germane to TST's purpose as an atheistic religious corporation, nor does TST allege facts demonstrating that its members face substantial obstacles in obtaining abortions or receive aid from TST. Accordingly, TST fails to demonstrate associational standing. *E.g.*, *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996).

### II. Plaintiffs Do Not Plausibly Allege a Free Speech/Free Exercise Claim.

As discussed above, the challenged statutes do not conflict with Plaintiffs' First Amendment rights. The valid regulations of the abortion procedure at issue neither restrain Plaintiffs' speech or beliefs, nor interfere with the Satanic Abortion Ritual that they perform immediately before, during, and after the procedure. MTD at 3, 7-8, 12. Nothing about the challenged statutes regulates what Plaintiffs may say, when or where they may say it, or in what manner they may express themselves. Nor can Plaintiffs establish that they must subsidize speech against their constitutional rights, as discussed above. There is simply no burden on Plaintiffs' First Amendment rights imposed by the challenged statutes.

Even if there were a burden on Plaintiffs' expressive rights—which there is not—

the most stringent level of constitutional review that could possibly apply would be the test set forth in *United States v. O'Brien*, 391 U.S. 367 (1968). At most, Plaintiffs have alleged an incidental burden on expressive activity, and that burden is justified by valid governmental interests. Regulation of medical procedures is unquestionably within the constitutional power of the government. MTD at 2, 17-18. The compelling interests of ensuring informed consent, providing medically accurate information and necessary care, and respecting the life of the unborn, among others, are wholly unrelated to suppression of free expression. MTD at 2, 17-18. Any theoretical intrusion on free expression would be so slight that it is amply justified to further these interests. Accordingly, Plaintiffs have no Free Speech claim. *Kleinman v. City of San Marcos*, 597 F.3d 323, 328 (5th Cir. 2010)

Finally, Plaintiffs' reliance on *Fulton v. City of Philadelphia*, No. 19-123, 2021 WL 2459253 (U.S. June 17, 2021), does not save Count 1. Plaintiffs contend that the challenged statutes violate the First Amendment because they contain "secular" exceptions and must therefore also include "religious" exceptions. Resp. at 12. As an initial matter, Plaintiffs' argument—even if it were correct—would affect only the verbal explanation required by § 171.012(a)(4)(C). There are no exceptions to the requirement that the abortionist perform a sonogram, display the sonogram images, and make audible the fetus's heartbeat. Tex. Health & Safety Code § 171.0122. Those neutral and generally applicable requirements are analyzed under *Employment Division v. Smith*, 494 U.S. 872 (1990), and are therefore constitutional. MTD at 14.

And in any event, *Fulton*'s holding is inapplicable even as to the verbal explanation. *Fulton* held that a law is not "generally applicable" where it includes a "system of entirely

4

discretionary exceptions." 2021 WL 2459253, at *6. The Court explained that a law cannot be generally applicable if it "invites the government to consider the particular reasons for a person's conduct by providing a mechanism for *individualized* exemptions." *Id.* at *5 (cleaned up). "Where the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of religious hardship without compelling reason." *Smith*, 494 U.S. at 884 (cleaned up).

Section 171.0122(d) does not "invite the government to consider the particular reasons for a person's conduct." *Fulton*, 2021 WL 2459253, at *5 (cleaned up). Unlike a "good cause" or other discretionary standard, only under three specified circumstances may the pregnant woman waive the verbal explanation portion of informed consent: when she is pregnant as a result of rape, incest, or another crime; minors under the judicial-bypass procedure; or the fetus has "an irreversible medical condition or abnormality." Tex. Health & Safety Code § 171.0122(d). That is not a "system of individualized exemptions"—the government does not have discretion to grant exceptions on a case-by-case basis, as Plaintiffs suggest. *Fulton* is no help to Plaintiffs here.

Moreover, the State's interests are weighed differently for women enduring the tragic circumstances provided for in these three exceptions. "*Casey* itself recognized that informed-consent laws like this one serve 'the legitimate purpose of reducing the risk that a woman may elect an abortion, only to discover later, with devastating psychological consequences, that her decision was not fully informed.'" *Doe v. Parson*, 960 F.3d 1115, 1119 (8th Cir. 2020). That risk is substantially different for pregnant women within § 171.0122(d)'s exceptions, who are motivated to terminate pregnancies due to

5

heartbreaking personal circumstances. For Doe and TST's members, however, the most that can be said is they believe that they should not have to abide Chapter 171's requirements. And "what [Plaintiffs] think is medically necessary does not cabin, under the state's legitimate power, the regulation of medicine." *Lakey*, 667 F.3d at 579. Plaintiffs are not similarly situated to other abortion-seekers for purposes of the Free Exercise Clause, and § 171.0122(d) does not treat comparable secular situations more favorably. *Cf. Tandon v. Newsom*, 141 S. Ct. 1294, 1296-97 (2021) (per curiam). Accordingly, Plaintiffs have failed to state a First Amendment claim.

### III. Plaintiffs' Substantive Due Process Claim is Meritless.

Valid regulations on abortion like those at issue here are not made unconstitutional merely because of incidental financial burdens, delay, or travel requirements. *E.g.*, *Planned Parenthood of Se. Penn. v. Casey*, 505 U.S. 833, 874, 885-87 (1992); *Planned Parenthood Ass'n of Kansas City, Mo., Inc. v. Ashcroft*, 462 U.S. 476, 490 (1983). Plaintiffs do not allege facts that would permit a different result. Indeed, Doe herself was able to obtain an abortion, Compl. ¶ 88, and many thousands of Texas women are able to obtain abortions each year despite whatever marginal cost is attendant to the sonogram requirement.[3] TST has not alleged any facts about its members to suggest that they are not similarly situated to Texas women as a whole. The constitutionality of these already-upheld regulations does not change simply because Plaintiffs are Satanists.

---

[3] The Court may take judicial notice of this fact even under Rule 12(b)(6), *Hall v. Hodgkins*, 305 F. App'x 224, 227-28 (5th Cir. 2008), which is a readily ascertainable matter of public record. *E.g.*, "ITOP Statistics," Texas Health and Human Services, https://www.hhs.texas.gov/about-hhs/records-statistics/data-statistics/itop-statistics (last visited June 28, 2021).

Plaintiffs are also incorrect in asserting that *Greenville Women's Clinic v. Bryant*, 222 F.3d 157 (4th Cir. 2000), stands for the proposition that any allegation of a financial burden is sufficient to create a fact issue. Resp. at 13-14. It is true that *Greenville* was decided after a bench trial. 222 F.3d at 162-63. But that difference in procedural history does not alleviate Plaintiffs of the burden of *alleging* facts to demonstrate that "the increased cost of abortion is prohibitive, essentially depriving women of the choice to have an abortion." *Id.* at 167. Plaintiffs cannot do so. Accordingly, their substantive due process claim is meritless.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion to dismiss. Because Plaintiffs have already amended their complaint twice, and because further amendments would be futile in the face of the legal infirmity of Plaintiffs' claims, the Court should not permit a third amended complaint.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief, General Litigation Division

*/s/ Christopher D. Hilton*
CHRISTOPHER D. HILTON
Lead Counsel
Texas Bar No. 24087727
Southern District No. 3029796
BENJAMIN S. WALTON
Texas Bar No. 24075241
Southern District No. 2338094
Assistant Attorneys General
General Litigation Division
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
Tel: (512) 463-2120
Fax: (512) 320-0667
christopher.hilton@oag.texas.gov
benjamin.walton@oag.texas.gov

***Counsel for Defendants***

## CERTIFICATE OF COMPLIANCE

I hereby certify, in accordance with Court Procedure 18(c), that the foregoing brief complies with the Court's word limit of 2,000. According to the word count function within Microsoft Word, this motion contains 1,984 words, exclusive of the case caption, signature block, and certificates.

*/s/ Christopher D. Hilton*
CHRISTOPHER D. HILTON

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2021, the foregoing document was served via the Court's CM/ECF system to all counsel of record.

*/s/ Christopher D. Hilton*
CHRISTOPHER D. HILTON