

August 30, 2022 (Tuesday)

U.S.D.C.; Southern District of Texas (Houston Div.)
ATTN: Hon. Charles Eskridge
    **Via ECF only**

Re: *Satanic Temple v. Young* (4:21-cv-00387) – request for ruling

Dear Judge Eskridge:

On August 22, 2022, we filed a Rule 65 motion (ECF 40) which seeks to direct the relevant State official from enforcing abortion regulations against our congregants' doctors, assertedly in violation of our congregants' hybrid Free Speech / Free Exercise rights. *See, generally*, U.S. Const. Amend. I; *Cantwell v. State of Connecticut*, 310 U.S. 296 (1940); *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022); *cf. also Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 881–82 (1990) (first theorizing "hybrid rights.")[1]

It has been over a week without a ruling on the matter, so we feel compelled to stress the urgency of this matter. We further feel compelled to give fair notice to the Court of our forthcoming petition for a writ of mandamus, to be filed with the Fifth Circuit. Absent the below-described constitutional crisis being favorably resolved

---

[1] Although we are hesitant to overcomplicate this case, "Free Parentage" rights are also involved in this powder keg of a case. *Cf. Smith*, 494 U.S. at 882 (distinguishing "**a free exercise claim unconnected with** any communicative activity **or parental right**") (emphasis added).

beforehand, we anticipate filing the petition next Tuesday (**Sept. 6, 2022**) by **2:00 pm**,[2] or as soon thereafter as is possible.

It is no melodrama to call this case a "constitutional crisis." The Texas legislature has authorized State officials to levy official and punitive sanctions against any who assist our congregants in practicing their religion as they see fit. That is *very* illegal. *Ibid.*; *see also Smith*, 494 U.S. 891-908 (O'Connor, J., concurrence).

As adequately addressed in the Rule 65 motion (ECF 40, at 2-7– *Never the Twain Shall Meet*), there is precisely one natural consequence of the offensive statutes: we will be forced to conform to the majority viewpoint, or we will be killed. That is the only natural outcome. We lack the State's monopoly on violence and we lack the Christians' numbers to effectuate the requisite political change to protect ourselves. *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943) ("One's right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly, and other fundamental rights **may not be submitted to vote**; they depend on the outcome of no elections") (emphasis added).

That means the target is firmly affixed to our backs. The Founding generation resolved to protect us by enacting the First Amendment– not coincidentally, the grounds for our complaint. *Compare* ECF 39, at 5-6 *with Lemon v. Kurtzman*, 403 U.S. 602, 622 (1971) (emphasis added):

> Ordinarily political debate and division, however vigorous or even partisan, are normal and healthy manifestations of our democratic system of government, but **political division along religious lines was one of the principal evils against which**

---

[2] Monday, September 5, is a federal holiday (Labor Day).

> **the First Amendment was intended to protect**.

To the best of our knowledge, all of the relevant statutes are cited in the Rule 65 motion (ECF 40, at 14-15). Based upon preexisting representations by Young's counsel of record, it is our understanding that Young–personally–is the sole obstruction to our congregants' fundamental civil rights. If we are mistaken, then the Rules provide appropriate mechanisms for Young to correct our understanding in due course. See FRCP 12(b)(7) (failure to join a required party); FRCP 19(a) (defining "required" parties"); FRCP 12(b)(1) (elemental standing principles require that we attack *all* of the offensive statutes or regulations).

Those case-dispositive questions can be answered later. Right now there is an immediate constitutional crisis in that our congregants are subjected to an ongoing risk of persecution because we think and act differently from majoritarian religious beliefs that, *e.g.,*:

- "Thou [the God of Abraham] has granted you [our Texas congregants] life" (ECF 40-1, at 34) (misquoting Job 10:12 (KJV)–should be "Thou hast granted *me* life"); or

- "Abortion is a terrible thing" (ECF 40-1, at 34) implicitly referencing Catholic Catechisms 2270-2275, Jeremiah 1:5, and similar religious texts.[3]

Indisputably, the question of whether to terminate an unwanted pregnancy is deeply personal, is deeply moral, and is therefore *uniquely* religious. See, e.g., ECF 40-1, at 35 ("We're talking about,

---

[3] *See Catechisms of the Catholic Church*, pp. 547-49, and religious texts cited therein. Available at https://www.usccb.org/sites/default/files/flip-books/catechism/548/ (last visited August 30, 2022).

probably, the most **personal**, **gut-wrenching decision** regardless of whichever side you're on") (emphasis added) (*against*); id., at 36 ("I don't guess there's anything more **visceral**, more **difficult**, as far as issues that we grapple with here, than this one") (emphasis added) (*for*); *see also Jacobson v. Commonwealth of Massachusetts*,[4] 197 U.S. 11, 29 (1905) (recognizing the "sphere within which the individual may assert the supremacy of his own will, and rightfully dispute the authority of any **human** government,–especially of any free government existing under a written constitution, to interfere with the exercise of that will") (emphasis added).

When *Jacobson* was decided, the notion of Satanists living openly among civil society, free from persecution, was nothing more than a pipe dream. The concept of *openly* defying the authority of God and the Church was 64 years premature. *See* Anton LaVey, *The Satanic Bible* (Avon Books, 1965).[5] Apparently, it is still premature.

Particularly as pertains to abortion, the common law–unabated by that societal pact we call the Constitution–has always decreed that "life" begins at the "quickening" (the first recognizable movement of the fetus *in utero*). *Roe v. Wade*, 410 U.S. 113, 132 (1973). *Dobbs* notwithstanding, our ancient social norms–the common law–"developed from a confluence of **earlier** philosophical, theological, and civil and canon law concepts of when life begins." *Roe*, 410 U.S. at

---

[4] Again, we hesitate to overcomplicate this case, but *Jacobson* adds "bodily autonomy" to the mish-mash of hybrid fundamental civil rights entailed in this dispute. *See also* Tenet III (we, too, venerate bodily autonomy).

[5] Doctrinal differences aside, LaVey proffered *some* good ideas. This case will not involve doctrinal disputes, partly because the Court lacks subject matter jurisdiction to entertain the question. *E.g. Gregorio v. Hoover*, 238 F. Supp. 3d 37, 46 (D.D.C. 2017) (adequately explaining the doctrine of judicial abstention from ecclesiastical questions).

132 (emphasis added).[6]

The Christians morally disagree with the concept of terminating an unwanted pregnancy. That is their right. U.S. Const. Amend. I. But it has always been *our* right that "Church and State should be separated." *Zorach v. Clauson*, 343 U.S. 306, 312 (1952). Before the First Amendment, "**zealous sectarians** entrusted with **governmental power** … would sometimes **torture**, **maim** and **kill** those they branded '**heretics**,' '**atheists**' or '**agnostics**.'" *Id.*, at 319 (Black, J., dissenting) (emphasis added).

We–the organized party-plaintiff collective of "heretics," "atheists," and "agnostics"–have duly notified the Court that "zealous sectarians entrusted with governmental power" have infringed upon our fundamental civil rights. ECF 39; U.S. Const. Amend. I. Those fundamental civil rights are the thin shroud that protects us from being tortured, maimed, and killed. *Lemon*, above.

Christians are not harmed by these offensive statutes. We, on the other hand, see them for what they are: an existential threat targeted directly at us. Because these offensive statutes directly target our ritual, yet leave their ritual unabated, they are invalid as an offense against the law. *Larson v. Valente*, 456 U.S. 228, 244 (1982) ("The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another.")

The litigation process will play itself out in due time. Between then and now, the people with the guns seek to force us to preen as if we think and act Christian. It therefore falls upon this Court to order the people with the guns to **immediately** stand down. ECF 40, at 14-15; 42 USC § 1983; U.S. Const. Amend. I; *Ex parte Young*, 209 U.S. 123 (1908); *Cantwell*, above, and *Kennedy*, above. If this Court

---

[6] "Earlier," that is, than when Christianity temporarily took over the role of government. *Roe*, at 130 ("Ancient religion did not bar abortion.")

will not protect us, then we will have no choice but to seek our remedy from the Fifth Circuit. *E.g.*, FRAP 21; Fifth Cir. R. 21.

Because our fundamental civil rights are at stake, we resist any effort to require that we post bond to support the order. FRCP 65; *Wright & Miller*, 11A Fed. Prac. & Proc. Civ. § 2954 (3d ed.).

Respectfully submitted,



| **Matt Kezhaya** | matt@crown.law |
|---|---|
| Ark. # 2014161 | direct: (479) 431-6112 |
| Minn. # 0403196 | general: (612) 349-2216 |

100 S. Fifth St., 19th Floor, Minneapolis, MN 55402

Cecile Young:

Your ongoing silence on this simple matter is deafening. **YOU ARE NOTIFIED** that, by Tuesday, **September 6, 2022**, at **2:00 pm** (or as soon thereafter as possible), we will file an emergency petition for a writ of mandamus with the Fifth Circuit which seeks entry of the prayed-for injunction (ECF 40, at 14-15) ("**immediately**.")

–Matt

### CERTIFICATE OF SERVICE

*Opposing counsel will be notified by the ECF system.*